---
Gillespie *v.* Broas
---

---

GILLESPIE and CORYELL *vs.* BROAS and others.

The words "a good unincumbered title," in the 18th section of the act of April 14, 1854, erecting the county of Schuyler, mean a title in fee simple absolute, free and clear from any legal exception or charge thereon. They import an estate without any prior claim, to continue forever, and having no qualification or condition in regard to its continuance.

Accordingly *held* that a deed conveying land to the supervisors, "for the use of the people of the county of Schuyler as long as said lot or premises shall be and are occupied for a county site for the court house, jail and clerk's office of said county of Schuyler; and when said lot or premises shall cease to be

Gillespie *v.* Broas.

used for the purposes aforesaid, then the same with its appurtenances &c. is to revert and belong to the said party of the first part, his heirs &c., the same as if this conveyance had not been executed"—was not a compliance with the act, and did not convey such a title as was contemplated by it. WELLES, J., dissented.

*Held also*, that a good title to the premises selected for a site by the commissioners appointed for that purpose, not having been made, to the county, within the time prescribed, the selection became wholly inoperative, and notice should have been given, as directed by the act, to the commissioners, who should thereupon have made another selection.

*Held further*, that another selection of a site was a condition precedent to the right of the building commissioners to enter into a contract for the erection of public buildings; and that a contract for the erection of buildings, entered into without a second selection having been made, being, on the part of the building commissioners, without authority, imposed no obligation on the county, and the contractors who erected the buildings had no valid claim against the county therefor. WELLES, J., dissented.

Upon a complaint by individuals claiming to be residents of the county of Schuyler, owning real and personal property and being tax-payers therein, praying for an injunction to restrain the payment of the sum of $3000, (voted to be raised by the board of supervisors,) on orders issued to D. and N. in part payment for the erection of a court house, jail and clerk's office upon a site selected by the board of supervisors, under a contract between D. and N. and the supervisors; on the ground that the supervisors had no authority to establish a site or enter into the contract, and hence none to issue the orders, and that the orders were not, therefore, a valid claim against the county; the plaintiffs not suing in behalf of other tax-payers as well as themselves, and the county not being made a party to the action;

*Held* that, assuming that the supervisors had no power to select a site for the buildings, and that the orders to D. & N. were therefore issued without authority, this was not a case for the interposition of the court by the extraordinary remedy of injunction; a *certiorari* to reverse the adjudication of the board of supervisors upon the claim, being the proper remedy. WELLES, J., dissented.

The review and correction of errors of that nature is not within the equitable jurisdiction of the supreme court, with which an injunction is connected, but belongs to its legal jurisdiction, which is to be exercised by writ of certiorari, or in some other strictly legal mode.

But neither a certiorari nor an injunction is proper where the allowance of a claim by a board of supervisors was merely erroneous, and not void.

A board of supervisors, having authority to commence suits, although they misjudge in regard to their having a cause of action, in a particular case, the fair charges of the attorneys and counsel employed by them, are a legal demand against the county; and after the amount of such charges has been allowed by the board, and orders issued therefor, the payment of such orders will not be restrained by injunction.

Gillespie *v.* Broas.

THIS was an appeal from an order of Justice SMITH, denying a motion to vacate an injunction order granted by Justice WELLES. The facts set forth in the complaint were these: that in April, 1854, the legislature passed a law erecting the county of Schuyler, and appointed commissioners to select a site for a court house, jail and clerk's office. That within the proper time the site was selected at Havana and a deed therefor given by the owner of the land, Charles Cook. That other commissioners were appointed by said act to superintend the erection of said court house, jail and clerk's office, and purchase materials and contract with workmen for the building thereof. That before entering upon the duties of the commission, they were required to execute a bond with approved sureties, to the supervisors of the county. That such bond was properly executed. That said commissioners entered upon the duties of the commission, purchased materials and contracted with workmen for the erection of the said buildings, and at the commencement of this suit the said court house, jail and clerk's office were completed upon the site selected by the locating commissioners appointed by the legislature, and orders given to the contractors therefor, upon the county treasurer, to the amount of $14,000. The complaint further alleged that soon after the location of the site as aforesaid, a majority of the supervisors of said county passed a resolution ignoring the provisions of the act aforesaid, and passed another resolution fixing a site for a court house, jail and clerk's office at Watkins, about three miles from Havana, and made a contract with Drake and Newman, two of the defendants, for the erection of a court house, jail and clerk's office upon such site; and that at the annual meeting of the supervisors in November, 1855, a resolution was passed authorizing the sum of $3000 to be levied and assessed upon the taxable property of said county, to be applied towards the payment of the cost of erecting "a court house, jail and clerk's office," and directing orders to be issued to said Drake and Newman; and that such sum was assessed upon the taxable property, and warrants issued to the town collectors for the collection thereof, and orders issued to said Drake and Newman

Gillespie *v.* Broas.

for that amount. The complaint further alleged that the said supervisors assessed upon the taxable property of said county $297.40 to pay for counsel fees, &c. in a suit commenced by them and others, which it was alleged they had no right to commence in behalf of the county, and they asked to have the payment enjoined. The plaintiffs are the contractors of the building commissioners, hold their orders upon the treasurer to the amount of $14,000, and are tax-payers of said county. They asked for an injunction to restrain the payment of said $3000 to Drake and Newman, for the reason that the supervisors had no right to select a site or make such a contract, and because their whole proceedings were illegal and void. They further asked for a decree for the payment of said $3000 to them as contractors.

The answer of the defendants did not deny the material allegations of the complaint, but set up certain alleged defects and irregularities, in excuse of the conduct of the supervisors. The defendants admitted upon information and belief, that the commissioners appointed to select a site for the county buildings selected a site in the village of Havana, described the land in writing and signed the same, which paper was duly filed by them, and a copy delivered to the building commissioners, who gave notice thereof to the owner of the lot. But they denied that the owner of the lot, within twenty days thereafter, made a good unincumbered title therefor to the supervisors of the county for the use of the people of the county of Schuyler, as required by the act of the legislature. They however admitted that he executed a deed, conveying an imperfect and incumbered title, which the supervisors were not authorized to, and did not, accept; whereby the said selection of a site became void and inoperative. They alleged that the deed contained the following unlawful exceptions and reservations, to wit: it provided that the grant of the said premises was to continue only "as long as said lot or premises shall be used or occupied for a county site for the court house, jail and clerk's office of said county of Schuyler, and when said lot or premises shall cease to be used for the purposes aforesaid, then

the same, with its appurtenances thereunto belonging, is to revert and belong to the said party of the first part, his heirs, executors, administrators or assigns, the same as if this conveyance had not been executed. The buildings now upon the above described lot or premises are hereby reserved, with the right to re-enter upon and remove the same from the said lot or premises." Wherefore the said board of supervisors were not authorized to, and did not, accept said deed, and refused so to do, and the said lot ceased to be, and did not become the site for said buildings ; and the building commissioners had no power or authority to build thereon, or contract for the erection of said buildings thereon. Of all which the plaintiffs had information and notice, and that they contracted to build, and had built thereon in their own wrong, and without authority of law. The defendants also alleged that the building committee did not, before entering upon the duties of their office, or at any other time, give bonds with approved sureties to the supervisors, for the faithful . expenditure of the moneys committed to their charge, as required by the act, and therefore had no authority to enter into the contract with the plaintiffs, on behalf of the county ; and that the plaintiffs had no claim upon the county or its funds, by reason thereof. The defendants also alleged that at the time the plaintiffs made the contract with the building commissioners, for the erection of the public buildings, the board of supervisors had not decided what sum, (not exceeding $15,000,) should be raised to erect the same, or how the money should be raised ; wherefore the commissioners had no power to contract on behalf of the county, with the plaintiffs, for the erection of the buildings ; of which the plaintiffs had full knowledge and information. The defendants further alleged that the plaintiffs willfully, knowingly and unlawfully erected said buildings on lands not belonging to the county of Schuyler, and not the site for the court house, jail and clerk's office, without any contract with, or authority from, said county or its authorized and legal agents, and against the request and in defiance of the authority of the lawful agents and representatives of said county ; and

Gillespie *v.* Broas.

that they had therefore no claims on the county to be compensated therefor, &c.

An injunction order was granted restraining the defendant Broas from receiving or paying the orders mentioned in the complaint as given or directed to be given and issued to Drake and Newman, out of any moneys in the treasury of Schuyler county, or out of any moneys raised by tax in said county; and restraining him from paying any or either of the orders stated in the complaint as given for counsel fees, out of any moneys in the treasury of said county or belonging to or levied and collected by said county. And the defendants Reynolds, Earle, Coon, Carpenter and Drake were restrained from receiving any or either of the said orders, in payment of taxes collected or to be collected by them, in said county, or of their several towns, and from paying the said orders out of any moneys collected or received by them as taxes. Drake and Newman were restrained from collecting or transferring the said orders or any or either of them. On the pleadings and proceedings, and upon affidavits, a motion was made by the defendants, at a special term held in the county of Steuben, in January, 1856, for an order to dissolve or vacate the injunction order. This motion was denied, without costs to either party, and the defendants appealed to the general term.

*Dana, Beers & Howard,* for the appellants.

*J. McGuire,* for the respondents.

T. R. STRONG, J. The words " a good unincumbered title," in the 18th section of the act erecting the county of Schuyler, mean a title in fee simple absolute, free and clear from any legal exception or charge thereon. They import an estate without any prior claim, to continue forever, and having no qualification or condition in regard to its continuance. This is the just interpretation of the phrase, separately considered. A " title" is, by the section, to be made to the county, and a title, without any qualifying words, includes the entire estate in the

premises; it is to be a " good" title, that is, in its unrestricted signification, a perfect title; and the title is to be " unincumbered," not bound by, or subject to, any thing in the nature of a lien or burden upon it. And there is nothing in the act indicating that any different estate was intended by the legislature. (*See Rexford* v. *Knight*, 1 *Kern.* 308; *Heyward* v. *The Mayor of· New York*, 3 *Seld.* 214.) The legislature doubtless intended that the county should have such a title to the premises, that if it should, at any future period, desire to change the site of the public buildings, the premises could be freely conveyed away or appropriated to another use; that there should be nothing connected with the title that might operate as an obstacle to such a change.

The deed of Cook does not purport to convey such a title. The duration of the estate in the premises, is, in terms, specified to be as long as they " shall be used and occupied for a county site for the court house, jail and clerk's office of said county of Schuyler ;" and a limitation of the estate to that period is expressly imposed, by adding, that "when said lot or premises shall cease to be used for the purposes aforesaid, then the same, with its appurtenances thereunto belonging, is to revert and belong to the party of the first part, his heirs, executors, administrators or assigns, the same as if this conveyance had not been executed." The effect of this specification and limitation is to make the estate a qualified or determinable fee—an estate which may continue forever, but which is defeasible or conditional on an event provided for. If the county should cease to use the lot or premises in the manner mentioned, the estate created by the deed would thereby be determined; and the title to the premises, including all buildings thereon, be revested in the grantor or his heirs. (4 *Kent's Com.* 9, 129.)

A title, in conformity to the act, to the premises selected by the commissioners appointed to select a site, not having been made to the county within the time prescribed, the selection became wholly inoperative, and notice should have been given as directed by the act, to the commissioners, and they should thereupon have proceeded to make another selection. Another se-

Gillespie v. Broas.

lection was a condition precedent to the authority of the building commissioners to enter into a contract for the erection of buildings. Those commissioners were appointed, in the language of the act, " to superintend the erection and building of the court house, jail and clerk's office for said county on such site or sites within the said county as shall have been designated and conveyed to the said county under the provisions of the last preceding section." (§ 19.) The contract for the building, made without another selection, being on the part of the building commissioners without authority, imposed no obligation on the county, and the plaintiffs have no valid claim against it for erecting the buildings.

This disposes of the case so far as the plaintiffs seek to have $3000, voted to be raised by the board of supervisors, and in process of collection, paid to them on the orders of the building commissioners in their favor upon the county treasurer; and it is unnecessary to consider other questions connected with that part of the case.

Another branch of the case is, that the plaintiffs seek an injunction to restrain the payment of the said $3000, or any funds of the county, on county orders issued to Drake and Newman, towards payment for the erection of a court house, jail and clerk's office for said county, upon a site selected by the board of supervisors, under a contract with the county by the board, on the ground that the supervisors had no authority to establish a site or enter into the contract, and hence none to issue the orders, and that the orders are not therefore a valid claim against the county. No complaint is made of the action of the board of supervisors in voting to raise a tax; the collection of the tax is not sought to be restrained, but only the payment of the amount of it when collected, or other funds of the county, on those orders. The plaintiffs rest their title to sue for this relief upon allegations that they are residents of the county of Schuyler, and own real and personal property therein, assessable and taxable in said county, and now assessed and taxed therein; that they are tax-payers therein, and that their property is assessed towards the payment of the said $3000. To

what sum their property is assessed, or what amount of tax is imposed on them in reference to this $3000 is not stated. They do not sue in behalf of other tax-payers, as well as themselves; but the action is brought for their sole benefit. For aught that appears no one objects to the payment of the money on the orders but the plaintiffs. And the county is not made a party to the action. This is not a case for the interposition of the court by the extraordinary remedy of injunction. Assuming that the supervisors had no power to select a site for the buildings, which I am inclined to think is the case, as the legislature had provided for another selection by the locating commissioners in the event which had occurred, and assuming that the orders to Drake and Newman were therefore issued without authority, it is not shown that Drake and Newman have not in good faith performed labor for the county for which they ought in good conscience to be paid the amount of the orders. It does not appear that any serious injury would be sustained by the plaintiffs, as tax-payers, by the payment of the orders by the county; and the county, by the board of supervisors, is not, as it should be, before the court. (*See Reynolds* v. *The Mayor of Albany*, 8 *Barb.* 597.)

Besides, if the supervisors had not authority to allow the claim of Drake and Newman and issue orders, I am inclined to think a certiorari to reverse their adjudication upon the claim was the proper remedy. (*Mooers* v. *Smedley*, 6 *John. Ch.* 28. *The Mayor &c. of Brooklyn* v. *Meserole*, 26 *Wend.* 132. *Livingston* v. *Hollenbeck*, 4 *Barb.* 10. *Van Rensselaer* v. *Kidd, Id.* 17. *Supervisors of Onondaga* v. *Briggs*, 2 *Denio*, 26.) In *Mooers* v. *Smedley*, Chancellor Kent says: "I cannot find by any statute, or precedent, or practice, that it belongs to the jurisdiction of chancery, as a court of equity, to review or control the determination of the supervisors, in the examination and allowance of accounts as chargeable against their county or any of its towns, and in causing the money so allowed to be raised and levied." And again, "The review and correction of all errors, mistakes and abuses in the exercise of the powers of subordinate public jurisdictions, and in the official

acts of public officers, belongs to the supreme court. In my opinion, it belongs exclusively to that court. It has always been a matter of legal, and never a matter of equitable cognizance." The other cases cited are to the same effect. The doctrine applied to the supreme court, with its present general jurisdiction in equity as well as law, is, that the review and correction of such errors is not within the equitable jurisdiction of the court, with which an injunction is connected, but belongs to its legal jurisdiction, which is to be exercised by writ of certiorari, or in some other strictly legal mode. Neither a certiorari nor an injunction would be proper, if the allowance of the claim was merely erroneous, and not void. (*Same authorities. The People v. Goodwin,* 1 *Seld.* 568.)

The plaintiffs had at least the ordinary remedy of the taxpayers, of displacing their public agents with whose action they are not satisfied, to which, with such other remedies as the laws may afford, they should have been left.)

I do not see any ground for restraining the payment of the orders for the $297.40 for costs, expenses and counsel fees in the suit mentioned in the pleadings, which is the residue of the relief asked by the plaintiffs. Most of what is said on the part of the case last above considered, is applicable to this. I will merely add, that I think as the supervisors have authority to commence suits, although they misjudged in regard to their having a cause of action in the suit in which the costs &c. were incurred, the fair charges of the attorneys and counsel employed by them were a legal demand against the county.

My conclusion, therefore, is that the order appealed from, refusing to vacate the injunction, should be reversed, with $10 costs, and that the injunction order should be vacated.

E. DARWIN SMITH, J. We are called upon to interpret the 18th section of the act to erect the county of Schuyler. The commissioners therein named are authorized and directed impartially to determine and select a proper site or sites for the court house, jail and clerk's office, to be erected in said county, and after the selection of such site they are required to imme-

diately reduce such determination to writing, giving a descrip-
tion of the lot or lots selected therein, affix their signatures
thereto, and cause the same to be filed in the office of the clerk
of the county of Chemung, and deliver a copy thereof to one or
more of the commissioners named in the 19th section, for the
erection of the said county buildings.   The last mentioned com-
missioners are required forthwith to notify the owner or owners
of such premises so selected, and in case a *good, unincumbered
title*, free of charge or expense to the board of supervisors of the
county of Schuyler, for the use of the people of the county of
Schuyler, for such premises, is made to the said county of Schuy-
ler, and delivered within twenty days after such notice to the
owner or owners as aforesaid, then such determination and lo-
cation shall be final and conclusive.   The commissioners to
locate the county buildings under the said 18th section, have
performed their duty, and due notice of the selection was given
to the owner of the premises so selected, and a deed thereupon
executed to the board of supervisors of the said county, sufficient
in all respects, except that it contained the following clause :
" As long as said lot or premises shall be used and occupied for
the county site of the court house, jail and clerk's office of said
county of Schuyler ; and when said lot shall cease to be used
for the purpose aforesaid, then the same, with the appurtenances
thereunto belonging, is to revert and belong to the said party
of the first part, &c. as if this conveyance had not been exe-
cuted."   The chief question for our decision is, whether a deed,
with the above qualification or provision, conveys a *good, unin-
cumbered title*.

The premises are to be conveyed to the supervisors *" for the
use of the people of the said county of Schuyler."*   The title to
be conveyed, I think, was to be such as the people of the state,
or the people of the county of Schuyler would acquire, if they
had taken the land or premises in question by the right of emi-
nent domain for the public use, and with payment of a just com-
pensation therefor ; just such title as the state acquires when it
takes land by deed or grant for a canal or other public use, and
pays by agreement or in appraisement, the full value or price

Gillespie *v.* Broas.

thereof. In such cases the state takes a fee, a fee simple absolute, unless a lesser estate is expressly specified or clearly intended. (*Rexford* v. *Knight*, 1 *Kernan*, 314. 2 *id.* 128. *Heyward* v. *Mayor of N. Y.*, 3 *Seld.* 314.) Here the county were to have a *good title. Title* of itself to real estate implies an estate in fee; nothing short is a complete title. The language of the act is a *good title.* A good title can be nothing less than a legal estate in fee, an estate *indefeasible.* (*Jones* v. *Gardner*, 10 *John.* 266. 12 *N. H. Rep.* 88. 2 *Serg. & R.* 50. 14 *Barb.* 424.) Such would be the construction of an agreement between individuals. A contract to give a good title to real estate, will be held to require a deed in fee, that should, in effect, give a perfect title. (17 *Wend.* 244. 23 *id.* 66. 2 *John.* 595. 11 *id.* 525. 1 *Denio*, 544.) The estate conveyed by this deed is not a fee simple absolute. It is a *qualified, base or determinable* fee. (4 *Kent*, 9, 129. 2 *Black.* 109, 154, 55. 2 *Bouv.* 217.) The language of the statute is, " a good, unincumbered title." The qualification in the deed is not an *incumbrance.* The language of the act should be interpreted to read—and I think does mean—a *good title free and clear of all incumbrance.* No incumbrance is shown that would avoid the deed; but the counsel for the plaintiff claims, that the county was to have a title only for particular purposes, to wit, for a county jail and court house, and that we are to look at the intention of the lawmakers. It is true that the land is to be conveyed for a particular purpose, but for that purpose the legislature had said the county must have a *good title.* We cannot vary the force of the language used, to meet any case of supposed intention. The intention of the legislature is to be inferred from the language used, when that language is plain and explicit. In such cases, there is no room for construction. In *Waller* v. *Harris*, (20 *Wend.* 561,) Judge Bronson says : " The current of authorities at the present day is, in favor of rendering statutes according to the natural and most obvious import of the language." (*Fowler* v. *Convelt*, 9 *Verm. R.* 203. *Mathers* v. *May*, 13 *Mees. & Wels.* 511.) In the *Sussex Peerage case*, (11 *Clark & Fin.* 143,) Ch. J. Tindal says : " The

only rule for the construction of acts of parliament is that they shall be construed according to the intent of the parliament which passed the act. If the words of the statute are in themselves precise and unambiguous, then no more can be necessary than to expound those words in their natural and ordinary sense. The words themselves alone do, in such case, best declare the intention of the lawgiver."

The supervisors were not authorized to receive less than a good title under this act, and it would be a breach of duty and a violation of the trust committed to them as public officers, to take or accept a less estate than an estate in fee absolute. The county is to proceed and put valuable erections on this lot, and it would not be right in the supervisors to put these erections in peril, if the county should ever wish to change the location of the county buildings, or to restrict its power to do so, under such a penalty. It is true, that the consideration for this deed was, the location of the county buildings on the premises conveyed, but the act secured that result, and if the deed gave a good unincumbered title, the county could not do otherwise than locate on such lot and keep the land. The question, however, for us, is purely one for the construction of this deed, and I concur with my brother Strong that it does not convey a *good title ;* and for the reasons assigned by him, I concur in his conclusion upon the whole motion.

WELLES, J. The 18th section of the act erecting the county of Schuyler (*Sess. Laws of* 1854, *p.* 913,) is in the following words, viz :

"Delos DeWolf, of the county of Oswego, Edward Dodd, of the county of Washington, Vivus W. Smith, of the county of Onondaga, shall be and are hereby appointed commissioners, whose duty it shall be, on or before the first day of June next, after the passage of this act, to examine and impartially determine and select a proper site or sites for the court house, jail and clerk's office, to be erected in said county of Schuyler; after such site or sites shall have been selected by them, or a majority of them, they shall immediately reduce such determination to

Gillespie *v.* Broas.

writing, giving a description of the lot or lots selected therein, affix their signatures thereto, and cause the same to be filed in. the office of the clerk of the county of Chemung, and deliver a copy thereof to one or more of the commissioners in the next section of this act named. It shall be the duty of the commissioners in the next section named, forthwith to notify the owner or owners of such premises so selected, and in case a good, unincumbered title, free of charge or expense to the board of supervisors of the county of Schuyler, for the use of the people of the said county of Schuyler, for such premises, is made to the said county of Schuyler, and delivered within twenty days after such notice to the owner or owners as aforesaid, then such determination and location shall be final and conclusive. In case such title is not made as aforesaid, within the time aforesaid, the said first named commissioners in this section shall be notified of such failure, and proceedings shall again be taken by them to make another selection in the same manner as if no previous determination had been made."

Section 19 appoints five persons commissioners to superintend the erection and building of the court house, jail and clerk's office for the county, upon the site or sites designated and conveyed under the provisions of the preceding 18th section. In pursuance of the said 18th section, and within the time therein limited, the commissioners first named made a selection of a site for a court house, jail and clerk's office, reduced their determination to writing, affixed their signatures thereto, and caused the same to be filed according to the above directions of the act. Notice having been given to Charles Cook, the owner of the premises selected, he, within twenty days thereafter, by deed, bearing date the 9th day of June, 1854, conveyed the premises so selected to the supervisors of Schuyler county, which deed was duly delivered. This deed conveyed the premises to said supervisors, "for the use of the people of the county of Schuyler, as long as said lot or premises shall be and are occupied for a county site for the court house, jail and clerk's office, of said county of Schuyler; and when said lot or premises shall cease to be used for the purposes aforesaid, then the

same, with its appurtenances thereunto belonging, is to revert and belong to the said party of the first part, his heirs, executors, administrators or assigns, the same as if this conveyance had not been executed. The buildings now upon the above described lot or premises, are hereby reserved with the right to enter upon and remove the same, from the said lot or premises, whenever required so to do by the supervisors aforesaid, or the building commissioners," &c.

There appears to be no objection to this deed, except the provisions for a contingent reversion of the premises, and the reservation of the buildings, with the right to enter and remove them.

If the intention of the act was, that the owner of the premises to be selected, should convey to the board of supervisors a title in *fee simple absolute,* the deed of Cook was not a compliance with its provision. It becomes important, therefore, to inquire whether such is the true interpretation of the statute.

The object of the legislature was to secure, by a gratuitous conveyance from the owner, a site for the public buildings mentioned. The section recited, appoints commissioners to select a proper site or sites *for the court house, jail and clerk's office,* to be erected in the county of Schuyler, after such selection should be made, in case the owner or owners should, within twenty days after notice thereof, make and deliver to the county *a good, unincumbered title, for the use of the people of the said county of Schuyler,* the selection should be final and conclusive. It is impossible to discover any other object in these provisions than the one mentioned, viz, to provide for a permanent seat of justice, free of expense to the county. The plan was, to hold out an inducement to the owners of the premises selected to bestow the land, and in return, to locate the public buildings permanently upon it. It was for that and no other purpose the land was wanted by the county. The owner was to receive no compensation for parting with it, except the real or supposed advantages of such permanent location. The transaction was in the nature of an agreement between the legislature, acting in behalf of the county, and the owner of the land to be selected,

Gillespie *v.* Broas.

by which the former was to make the location, provided the lat-
ter would give the land for that purpose. It would seem to
follow as a necessary consequence, that when the purpose of the
grant should fail, the grant itself should cease. The location
was, by the terms of the act, to be final and conclusive, and yet
there was a possibility of a change. The legislature have the
power to order the site abandoned, and a new one selected in
another town or village, and that even before any buildings are
erected upon the one first selected. If it were certain that the
site would never be changed, the provision objected to would be,
if not void, entirely nugatory and harmless ; but inasmuch as a
change is possible, and if ever made, the motive and inducement
for the conveyance would be at end, it would be no more than
just and equitable that the effect of the conveyance should ter-
minate. It seems to me entirely clear that any other view is
incompatible with that justice and fairness which we are bound
to intend always governs and actuates the law-making power,
and contrary to the plain sense of the language of the section
under consideration.

The language of the statute is, that the title shall be made
*"for the use of the people of the county of Schuyler."* What
use is here contemplated ? Is it a general use, or the particular
one for which the selection was required, in the same section, to
be made ? It is quite apparent that it was the latter, and no
other. It was therefore proper that the deed should express
the use as thus interpreted, and that the grant should be limit-
ed accordingly. The title to be made was to be " good " and
*" unincumbered."* It was to be good for the purposes intended
and specified in the act ; manifestly, nothing more was required.
It was also to be " unincumbered." No incumbrance is alleged,
excepting the limitation before considered, and if the construction
I have adopted be correct, the limitation was, in no sense, an
incumbrance. The good, unincumbered title required, was a
title which would secure to the county the enjoyment of the
premises as a site for its court house, jail and clerk's office, as
long as it should be used for that purpose. The deed given by
Cook secured such enjoyment, provided he was the legal owner

at the time he made the conveyance, and the land was not en-cumbered by mortgage or judgment. His title is not disputed, and there is no pretense of any such incumbrance.

As to the provision in the deed for a conditional reversion of the premises, it is sufficient to say, that it neither adds to, nor diminishes from, the legal effect which would attach to the grant, in case that provision had not been inserted, provided the pre-ceding views in relation to the intent of the statute are correct. When a conveyance is to a particular use, the residue results in favor of the grantor. (2 *Fonb. Eq.* 2d *Eng. ed. p.* 132. 1 *id.* 439. 1 *Lomax Dig.* 200. 4 *Kent's Comm.* 5th *ed.* 300. 1 *Cruise's Dig.* 399, *tit.* 11, 20, 32, 34, 44.)

The reservation of the buildings is not inconsistent with the object and intent of the conveyance. It was a *site* for the county buildings—the land upon which to erect them, which the act contemplated, and not the buildings which might be standing upon it—which were capable of being removed, and which would have to be removed to make way for the new ones to be erected by the county.

It is contended on the part of the defendants, in addition to the objections growing out of the form of the conveyance of Cook to the supervisors, that the proceedings of the building commis-sioners were irregular and void, for the reasons that they did not give bonds with approved securities, as required by the 22d section of the act; and for the further reason that the super-visors have not fixed the amount the buildings should cost. It appears that the building commissioners, before they entered upon their duties as such, gave their bond to the board of su-pervisors, in pursuance of the 22d section, with good and suffic-ient sureties, who justified in the requisite amount. Notice was given to the supervisors to meet at Havana, on the 5th day of June, 1854, for the purpose of approving the bonds, but the board did not meet as requested. The bond was on that day presented to two of the supervisors, who, knowing the sureties, and being satisfied with them, accepted the bond, and so in-formed the building commissioners. That at the next ensuing meeting of the board of supervisors, one of the said members

Gillespie *v.* Broas.

of the board who had accepted the bond, presented to and left the said bond with the board, in whose possession it has since remained, without any action being taken thereon in reference to approving of the sureties or otherwise, and has never been returned or offered to be returned to the building commissioners. The sureties are shown to be amply sufficient, and no objection to their sufficiency has ever been made. The building commissioners have gone on and entered into a contract for building the court house, jail and clerk's office, and when this action was commenced, the court house and clerk's office were erected and completed upon the site selected by the commissioners, named in the 18th section as before stated, which have been accepted by the building commissioners.

The 22d section of the act provides that the building commissioners shall, " before they enter upon the duties of said office, give bonds, with approved sureties, to the supervisors of said county, for the faithful expenditure of the moneys committed to their charge for that purpose." The act does not provide in terms by whom the bonds must be approved; and assuming that the approval is to be by the board of supervisors, it must be deemed to have been done by them. No special act is indicated in the statute by which such approval shall be manifested. No indorsement upon the bond is required. It is sufficient if enough appears to show they were satisfied with its form and execution, and with the pecuniary ability of the sureties. After what has been done, it is, as it seems to me, too late for the board to say they have not approved of or are not satisfied with the bond in any of the respects mentioned. If they did not approve it, they should have said so, and given notice of their disapproval, or returned the bond. It is shown to be unobjectionable and it is now to be presumed it met their approbation in respect to its form, execution and sufficiency. The building commissioners have done all in their power to comply with the law in this respect. The objection itself is formal and technical, and arises out of the neglect, if not the contumacious conduct of the board of supervisors.

It is also objected on the part of the defendants, that the

building commissioners had no powers to contract until the board of supervisors had prescribed the amount to be expended in erecting the court house, jail and clerk's office.

The 20th section of the act authorizes and requires the board of supervisors to levy a sum, not exceeding $15,000, in such annual amounts as they shall deem most advisable, or they may loan for a term of years on the credit of the county the whole or a part of the money necessary for the purposes aforesaid. The 21st section authorizes the building commissioners to contract for the building, or with workmen, and purchase materials for building the court house, jail and clerk's office, and from time to time to draw on the treasurer of said county, for such sum or sums of money for the purposes aforesaid as should come into the treasury by virtue of the act. And the treasurer is thereby required, out of any such moneys, to pay upon the order of the building commissioners, or a majority of them, the several sums of money to be so drawn for. The remainder of the section requires the commissioners to account, when required, to the supervisors, for the money so received. This, with the 19th section, is all there is in the act touching the powers and duties of the building commissioners. It will be seen that they are not controlled in terms, at least as to the time when they were to commence the erection of the buildings, nor the amount they were to cost, excepting that the county was not to be charged with an amount exceeding $15,000, nor as to the size, plan, style or kind of materials to be used. They are expressly authorized, in general terms, to contract for the erection of the buildings, or with workmen, and to purchase materials. I entertain no doubt that a contract made by the commissioners for the erection of the buildings, or for labor or building materials, before any action by the supervisors in relation to the amount to be raised from the county, would be valid and binding upon the commissioners. If they exceeded the powers conferred upon them by the act, they would be personally liable to make good their contracts. But any money levied by the supervisors for the erection of the buildings under the act would be applicable and sub-

Gillespie *v.* Broas.

ject to the drafts of the commissioners. The supervisors have not the power to say what the buildings shall cost. It may be they have a discretion to say they shall not *cost the county* beyond a certain amount, by them to be determined, not exceeding $15,000. And yet I think it might be argued with much plausibility, that the commissioners are authorized to go on and erect the buildings, when, and in such manner and at such cost, not exceeding the sum mentioned, as they shall deem advisable; and that it was the duty of the supervisors to levy or borrow a sufficient amount to meet the expenses thus incurred, and that their discretion was restricted to the proportions to be annually levied, and as to whether they should borrow the whole or any part. However that may be, whatever amount should be raised from, or upon the credit of the county, would, as before remarked, be subject to the drafts of the building commissioners. The sum of $3000 has been levied upon the county towards payment for the erection of a court house, jail and clerk's office, of the county, and drafts have been made for it, by the building commissioners, in favor of the plaintiffs, who erected the court house and clerk's office under contract with the commissioners. The plaintiffs have thus acquired a vested right to this money, which the supervisors and the defendants are seeking and attempting, or threatening, to divert to another and totally illegal purpose.

The question of parties is not now considered, as it does not, in my judgment, belong to this occasion.

It cannot, with propriety, be contended that the questions which I have considered are so clearly with the defendants as to justify the court in dissolving the injunction order, before the final hearing. None but the plaintiffs are entitled to the $3000, as no one has the right to draw it but these building commissioners. That the supervisors had no right to appropriate it towards paying for the building at Watkins, seems to me too plain to admit of an argument.

The injunction should, at least, be retained until the final hearing, so that the plaintiffs, if the decision shall then be adverse to them, would be in a condition to present the question

to the court of dernier resort; which they could not do by appeal from any decision made on this appeal.

Order appealed from reversed, with $10 costs, and injunction order vacated.

[MONROE GENERAL TERM, September 1, 1856.  *T. R. Strong, Welles* and *Smith,* Justices.]