CLARK, PLAINTIFF, *v.* SMITH, DEFENDANT.

Common Pleas Court, Paulding County.

No. 18934. Decided July 16, 1962.

230

*Mr. Harvey E. Hyman* and *Mr. Sumner J. Walters* of *Messrs. Stroup & Walters,* for plaintiff.
    *Mr. John F. DeMuth,* for defendant.

HITCHCOCK, J. This action is one in ejectment brought by plaintiff against defendant, who, in his amended answer admits possession of the real estate in controversy and the withholding thereof from plaintiff and denies other allegations of the petition. By cross-petition defendant alleges that he has duly acquired legal title in fee simple to said real estate from the Board of Education of Antwerp Local School District, and that plaintiff can only claim as a reversioner of one Joseph E. Clark, his late father, who died about 1920, and that the deed under which such claim is necessarily asserted is defective to create a reversion in plaintiff because it originally vested the fee in defendant's predecessor, and prays dismissal of the petition and that his title be quieted against plaintiff.

Plaintiff has filed a motion for judgment on the pleadings and defendant has filed a motion for judgment by default, plaintiff having filed no timely reply to defendant's answer or answer to defendant's cross-petition. The Court will consider these motions in inverse order of their filing.

Defendant's motion for judgment by default will be overruled because, by moving for judgment on the pleadings, plaintiff has asked for a ruling upon the assumption that defendant's recital of facts is true.

For decision here is the meaning and construction of a deed executed in this county August 2, 1884, and filed with the Recorder for record September 29, 1884.

The deed purports to convey an acre of ground one hundred sixty-five feet wide east and west and two hundred sixty-four feet long north and south out of the southeast corner of Sec-

tion four (4), Carryall Township, Paulding County, Ohio, and in pertinent part reads:

". . . We Joseph E. Clark and Martha Clark, his wife in consideration of Fifty Dollars to them paid by Carryall Township District School Board the receipt whereof is hereby acknowledged do hereby Bargain, Sell and Convey to the said Carryall Township District School Board their successors in office forever for school purposes the following real estate . . . (description)

". . . to be used for school purposes only and to revert to the original grantor (said Joseph E. Clark) whenever it shall be put to any other or different use . . .

"To Have and To Hold the same to the said Carryall Township School Board and their successors in office forever we hereby covenanting that the title so conveyed is clear, free and unincumbered, and that we will warrant and defend the same against all claims whatsoever. Except the limitations of uses of said lands and rights of reversiars (sic) hereinafter (sic) set forth - - and Martha Clark wife of said Joseph E. Clark in consideration of one dollar . . . do remise, release and forever quit claim unto the said grantee all her right by way of dower or otherwise . . ."

Joseph E. Clark died in 1920, or thereabouts. No information is given concerning his wife Martha. The Carryall Township District School Board of 1884 has today as its successor The Board of Education of Antwerp Local School District. The one acre in question ceased to be used for school purposes in the spring of 1925 and has never since been used for school purposes.

Plaintiff contends that this deed created a fee simple determinable in the grantee for so long as used for school purposes, and the use having determined, plaintiff as reversioner is entitled to his share and to possession of the real estate.

Defendant contends that this deed, under Ohio law vested a fee simple in the grantee subject at most only to be defeated by failure of use for school purposes within the lifetime of the grantor. That having duly purchased this real estate from The Board of Education of Antwerp Local School District, suc-

cessor to the original grantee, he is the true owner of the premises and entitled to have title quieted in him as against plaintiff.

As I understand it, the law of real property in common law countries from 1628, when Lord Coke published the first edition of his famous work on the English law of land tenures known as Coke on Littleton, and until recently in Ohio, these contentions would be simply answered and resolved as follows:

The grantors used apt language to convey to the School Board a fee simple determinable in one acre of land. The Board was a body politic and corporate. The grant was to it "their successors forever for school purposes." When it ceased to be used for school purposes in 1925 the fee determined and without more reverted to the heirs of the original grantor alive at the time of the determination, unless the reversion had been duly transferred to others. I find the scholars are as one in these conclusions, to-wit:

Co. Lit., 1 b. *"Fee simple." Fee* commeth of the French *fief, i. e. Praedium beneficiarium,* and legally signifieth inheritance, as our author himself hereafter expoundeth it. And *simple* is added, for that it is descendible to his heirs generally, that is, simply, without restraint to the heirs of his body, or the like, *Feodum est quod quis tenet ex quacunque causa sive sit tenementum, sive redditus, etc.* In *Domesday* it is called *feudum.* Of fee simple, it is commonly holden that there be three kinds, *viz.,* fee simple absolute, fee simple conditional, and fee simple qualified, or a base fee. But the more genuine and apt division were to divide fee, that is, inheritance, into three parts, *viz.,* simple or absolute, conditional, and qualified or base. For this word *(simple)* properly excludeth both conditions and limitations that defeat or abridge the fee. Hereby it appeareth, that fee in our legal understanding signifieth, that the land belongs to us and our heirs, in respect whereof the owner is said to be seised in fee; and in this sense the king is said to be seised in fee.

Lit., §1. Tenant in fee simple is he which hath land or tenements to hold to him and his heirs forever. And it is called

Errata:—The fourth line from the top of this page should read "As I understand it, *under* the law, etc." The word "under" has been omitted.

in Latin, *feodum simplex,* for *feodum* is the same that inheritance is, and *simplex* is as much as to say, lawful or pure. And so *feodum simplex* signifies a lawful or pure inheritance. For if a man would purchase lands or tenements in fee simple, it behooveth him to have these words in his purchase. To have and to hold to him and to his heirs: for these words (his heirs) make the estate of inheritance. For if a man purchase lands by these words, To have and to hold to him forever: or by these words, To have and to hold to him and his assigns forever: in these two cases he hath but an estate for term of life; for that there lack these words (his heirs), which words only make an estate of inheritance in all feoffments and grants.

Co. Lit. 8b. Here Littleton treateth of purchase by natural persons, and not of bodies politic or corporate; for if lands be given to a sole body politic or corporate (as to a bishop, parson, vicar, master of a hospital, &c.), there to give to him an estate of inheritance in his politic or corporate capacity, he must have these words, To have and to hold to him and his successors; for without these words *successors,* in those cases there passeth no inheritance; for as the heir doth inherit to the ancestor, so the successor doth succeed to the predecessor, and the executor to the testator. But it appeareth here by Littleton, that if a man at this day give lands to I. S. and his successors, this createth no fee simple in him; for Littleton speaking of natural persons saith that these words (his heirs) make an estate of inheritance in all feoffments and grants, whereby he excludeth these words (his successors).

Bl. Com. II, 109, A base, or qualified fee is such a one as hath a qualification subjoined thereto, and which must be determined whenever the qualifications annexed to it is at an end. As, in the case of a grant to A and his heirs, *tenants of the manor of Dale;* in this instance, whenever the heirs of A cease to be tenants of that manor, the grant is entirely defeated. So, when Henry VI granted to John Talbot, lord of the manor of Kingston-Lisle in Berks, that he and his heirs, lords of the said manor, should be peers of the realm, by the title of Barons of Lisle; here John Talbot had a base or qualified fee in that dignity, and the instant he or his heirs quitted the seigniory of this manor

234

the dignity was at an end. This estate is a fee, because by possibility it may endure forever in a man and his heirs; yet as that duration depends upon the concurrence of collateral circumstances, which qualify and debase the purity of the donation it is therefore a qualified or base fee. (Note: The foregoing quotations from Littleton, Coke and Blackstone are in modern spelling as quoted by Dean Everett Fraser, The Law School of the University of Minnesota, in his book, "Cases and Readings on Property." C. C. H., 1932.)

See also: Charles C. White, Chief Title Officer, The Land Title Guarantee and Trust Company. *"Reversionary Restrictions."* 14 U. Cincinnati L. R. 524 (1940); Charles L. Gramlich, *"Future Interests,"* 4 O. S. L. J. 106 (1938); and note entitled, *"Deeds—Fee Simple Determinable—Necessity For Words of Inheritance in Reverter Clause,"* 8 O. S. L. J., 218 (1942).

This controversy, however, is governed by Ohio law which I apprehend to have been, in recent years, radically changed by three decisions of our Supreme Court, to-wit: *Embleton* v. *McMechen*, 110 Ohio St., 18, 143 N. E., 177, 34 A. L. R., 689 (1924); *In re Matter of Petition of Copps Chapel Methodist Episcopal Church*, 120 Ohio St., 309, 166 N. E., 218 (1929); and *First New Jerusalem Church* v. *Singer*, 68 App., 119, 34 N. E. (2d), 1007, 22 Ohio Opinions, 217, 33 Ohio Law Abs., 518; motion to certify overruled, No. 28642, June 11, 1941.

*Sperry* v. *Pond*, 5 Ohio, 387, 24 Am. Dec., 296 (1830), recognized creation of a fee simple determinable. Allen, J., in *First Universalist Society of North Adams* v. *Boland*, 155 Mass., 171, 29 N. E., 524, 15 L. R. A., 231 (1892), in what I deem both a scholarly and authoritative opinion supports everything said in *Sperry* v. *Pond*, in a case where, peculiarly enough, the original grantor was also a man named Clark. Pertinent language from this opinion will bear repeating, to-wit:

"Allen, J. * * * The grant to the plaintiff was to have and to hold, etc., 'so long as said real estate shall by said society or its assigns be devoted to the uses, interests, and support of those doctrines of the Christian religion,' as specified. 'And said

real estate shall by said society or its assigns be diverted from the uses, interests, and support aforesaid, to any other interests, uses or purposes than as aforesaid, then the title of said society or its assigns in the same shall forever cease, and be forever vested in the following named persons,' etc.  These words do not grant an absolute fee, nor an estate on condition but an estate which is to continue till the happening of a certain event, and then to cease.  That event may happen at any time, or may never happen.  Because the estate may last forever, it is a fee.  Because it may end on the happening of the event, it is what is usually called a determinable or qualified fee.  The grant was not upon a condition subsequent; and no reentry would be necessary; but by the terms of the grant the estate was to continue so long as the real estate should be devoted to the specified uses, and when it should no longer be so devoted, then the estate would cease and determine by its own limitations.  Numerous illustrations of words proper to create such qualified or determinable fees are to be found in the books, one of which, as old as *Walsingham's case*, 2 Plowd., 557, is 'as long as the church of St. Paul shall *stand.*'  *Brattle Square Church* v. *Grant*, 3 Gray, 142, 147.  *Easterbrooks* v. *Tillinghast*, 5 Gray, 17.  *Ashley* v. *Warner*, 11 Gray., 43.  *Attorney General* v. *Merrimack Manuf. Co.*, 14 Gray, 586, 612.  *Fifty Associates* v. *Howland*, 11 Met., 99, 102.  *Owen* v. *Field*, 102 Mass., 90, 105.  1 Washb. Real Prop. (3d ed.), 79; 2 Washb. Real Prop. (3d ed.), 20, 21.  4 Kent Com., 126, 127, 132, note, 2 Crabb, Real Prop. secs., 2135, 2136.  2 Flint. Real Prop., 230, 232. Shep Touchst., 121, 125.

"A question or doubt, however, has arisen, though not urged by counsel in this case, whether after all there is now any such estate as a qualified or determinable fee, or whether this form of estate was done away with by the statute *Quia Emptores*.  See Gray, Rule against Perpetuities, secs. 31-40, where the question is discussed and authorities are cited.  We have considered this question, and whatever may be the true solution of it in England, where the doctrine of tenure still has some significance, we think the existence of such an estate as a qualified or determinable fee must be recognized in this country, and

such is the general consensus of opinion of courts and text writers. *Iamaica Pond Aqueduct* v. *Chandler*, 9 Allen, 159, 168. *Leonard* v. *Burr*, 18 N. Y., 96. *Gillespie* v. *Broas*, 23 Barb., 370. *State* v. *Brown*, 3 Dutch, 13. *Henderson* v. *Hunter*, 59 Penn. St., 335. *Wiggins Ferry Co.* v. *Ohio & Mississippi Railway*, 94 Ill., 83, 93. 1 Washb. Real Prop. (3d ed.), 76-78. 4 Kent Com., 9, 10, 129. See also, of English works in addition to citations above, Shep. Touchst., 101; 2 Bl. Com., 109, 154, 155; 1 Cruise Dig. tit., 1, secs. 72-76; 2 Flint. Real Prop. 136-138; 1 Prest. Est., 431, 441; Challis, Real Prop., 197-208.

"Since the estate of the plaintiff may determine, and since there is no valid limitation over, it follows that there is a possibility of reverter in the original grantor, Clark. This is similar to, though not quite identical with, the possibility of reverter which remains in the grantor of land upon a condition subsequent. The exact nature and incidents of this right need not now be discussed, but it represents whatever is not conveyed by the deed, and it is the possibility that the land may revert to the grantor or his heirs when the granted estate determines. Challis, Real Prop., 31, 63-65, 153, 174, 198, 200, 212. 1 Prest. Est., 431, 471. *Newis* v. *Lark*, 2 Plowd., 403, 413. Shep. Touchst., 120. 2 Washb. Real Prop. (3d ed.), 20, 579. 4 Kent Com., 10, *Smith* v. *Harrington*, 4 Allen, 566, 567. *Attorney General* v. *Merrimack Manuf. Co.*, 14 Gray, 586, 612. *Brattle Square Church* v. *Grant*, 3 Gray, 142, 147-150. *Owen* v. *Field*, 102 Mass., 90, 105, 106. *Gillespie* v. *Broas*, 23 Barb., 370. Gray, Rule against Perptuities, sec., 33, 34, 39, and cases cited. * * *"

Striving for a measure of clarity in discussing the problem before the Court I start with the definitions of Professor Richard R. Powell, in his work entitled "The Law of Real Property," 1950, Matthew Bender & Co., as supplemented to 1961.

"The modern estate in fee simple can be either an estate in fee simple absolute or an estate in fee simple defeasible. When it is defeasible it can end by virtue of a special limitation,[12] a condition subsequent,[13] or an executory limitation.[14] . . ." Powell, Par. 178, p. 14, Vol. 2.

The foregoing text is annotated as follows:

"[12]Rest. Prop., supra Section 172, n. 6, Section 23, defines

the term 'special limitation' as denoting 'that part of the language of a conveyance which causes the created interest automatically to expire upon the occurrence of a stated event, and thus provides for a terminability in addition to that normally characteristic of such interest.' Thus a limitation of land 'to B and his heirs so long as the town C remains unincorporated' creates in B an estate in fee simple defeasible by a special limitation which is also properly called an 'estate in fee simple determinable.' Accuracy will be served by using this term only for this one type of defeasibility.

"Concerning estates in fee simple determinable, see Powell, Determinable Fees, 23 Col. L. Rev. 207 (1923). As to forms of limitation sufficient to create estates in fee simple determinable, see infra Section 187.

"[13]Rest. Prop. supra Section 172, n. 6, Section 24, defines the term 'condition subsequent' as denoting 'that part of the language of a conveyance, by virtue of which upon the occurrence of a stated event, the conveyor, or his successor in interest, has the power to terminate the interest which has been created subject to the condition subsequent, but which will continue until this power is exercised.' "

See Williams, H. R., Restrictions on the Use of Land: Conditions Subsequent and Determinable Fees, 27 Tex. L. Rev., 158 (1949).

As to forms of limitation sufficient to create estates in fee simple subject to a condition subsequent, see infra Section 188.

"[14]Rest. Prop., supra Section 172, n. 6, Section 25, is as follows:

"(1) Except as stated in Subsection (2), the term 'executory limitation' denotes that part of the language of a conveyance, by virtue of which

"(a) the interest subject thereto, upon the occurrence of a stated event is to be divested, before the normal expiration thereof, in favor of another interest in a person other than the conveyor or his successor in interest; or

"(b) an estate in fee simple determinable, or an analogous interest in a thing other than land, or an estate in fee simple

conditional, concurrently with its expiration, is to be succeeded forthwith by another interest in a person other than the conveyor or his successor in interest.

"(2) The term 'executory limitation' does not denote that part of the language of a conveyance which creates a remainder on condition precedent, the fulfillment of which can divest a reversionary interest left in the conveyor or his successor in interest.

"Section 155 of the Restatement of Property thus defines a power of termination:

"A power of termination is the future interest created in the transferor, or his successor in interest, by a transfer of either an estate in land or an analogous interest in a thing other than land, subject to a condition subsequent.[18] ..." Powell, Par. 272, p. 452, Volume 2.

The foregoing text is annotated as follows:

"[18]The term 'condition subsequent' is defined in Rest. Prop. supra Section 269, n. 2, Section 24. Comment b thereunder is as follows:

"Whenever an estate subject to a condition subsequent is created, some person has the power to terminate this estate upon the occurrence of the stipulated event. Thus such an estate does not end automatically and by expiration as does an estate subject to a special limitation. On the contrary it is cut short, or divested, if, but only if, the person having the power chooses to exercise it. This option to terminate an estate upon breach of a condition subsequent is referred to in this Restatement as a 'power of termination.'"

In the *Copps Chapel case*, it was held in syllabus that:

"Where a quitclaim deed, for valuable consideration conveys to trustees of an unincorporated church association certain real property, 'To have and to hold * * * unto the said grantees and their successors * * * so long as said lot is held and used for church purposes' without any provision for forfeiture or reversion, such statement is not a condition or limitation of the grant. Since the deed contains no provision for reversion or forfeiture, all of the estate of the grantor was conveyed to the grantees. Hence, a church building affixed to

the realty does not pass to the heirs of the grantors when such lot and building cease to be used for church purposes."

The Chief Justice dissented saying, inter alia, ". . . The difficulty with this decision is that it reaches impractical results. Aside from the impractical outcome of the case, I find myself unable to concur in the legal propositions declared. . . ."

When *Copps Chapel* was decided I was a boy of fifteen living in a county adjoining the one wherein the chapel stood. I suspect that our Supreme Court at that time had a private opinion that the then inhabitants of Ohio would find outrageous a decision holding both land and building in that case to belong to the reversioners. Also, they obviously could not feel the Court of Appeals correct in holding the church building removable as a trade fixture. No one seems to have suggested that equity might have been invoked to prevent the reversioners from receiving benefits in addition to the bare land upon the determination of a determinable fee, especially where the original grant was made for a public, religious, or charitable purpose. This idea, it seems to me, might have been properly utilized in the *Copps Chapel* situation by reason of the history of hundreds, perhaps thousands, of similar tracts in this state. Surely equity is still the mitigating principle of the law.

Someone has said that "drama moves men" and one needs but a glimmer of the ability of Shakespeare to appreciate the drama of the facts disclosed in *Copps Chapel*. John Roberts, a substantial farmer, a member and solid financial supporter of the congregation, in 1871, deeded a corner of his farm to the *Copps Chapel* trustees, ". . . their heirs and assigns forever . . .," to have and to hold ". . . for church purposes . . ." By 1925 John Roberts is dead and the congregation has dwindled to a handful of faithful. Church services no longer are held. The grantor's heirs think they know the law and have fallen out with the trustees, who enter to remove their little church but are met by the husband of the reversioner in possession who says to them, "Begone. The church is ours—not yours. You shall not have so much as a doorknob." So the trustees apply to the Court of Common Pleas for permission to remove their church and its contents and to allow the land to revert to

the heirs of the grantor. The trial Court said, "Permission granted." On appeal, the Court of Appeals said, "Judgment below affirmed because the church building, in the circumstances, is in the nature of a trade fixture." The ungenerous and inflexible reversioners appeal again to the Supreme Court which says to them, in a final word, "Not only the church building but the land on which it stands belongs to the church trustees. We award you appellants one privilege only; that of paying your able counsel for his extraordinary services rendered in your behalf; also, the costs. Court adjourned." But whatever the drama, *Copps Chapel* remains the law of Ohio to this date.

The deed in this case, however, did have a reverter clause, to-wit: ". . . and to revert to the original grantor (said Joseph E. Clark) whenever it shall be put to any other use . . ." Joseph E. Clark died years before this land ceased to be used for school purposes. I am unable to find where any common law court, before *Copps Chapel* was decided, had ever required a reverter clause in a deed creating a fee simple determinable, as necessary to the restoration of the fee to the grantor or his heirs, by reversion, upon the happening of the determining event. Traditionally the common law automatically returned the fee absolute to the grantor or his heirs without reverter clause of any kind as the grantor or a fee simple determinable estate was never conceived to have parted with the absolute feature thereof. See Gramlich, 8 O. S. L. J., 218.

*Copps Chapel*, however, was preceded in 1924 by the *Embleton case* where it was held, "Where an estate is created by way of forfeiture, upon violation of a condition subsequent, words of inheritance or perpetuity are required to pass a fee-simple estate in the forfeited premises." The following year the legislature passed Section 8510-1, General Code, now Section 5301.02, Revised Code, abolishing the requirement of words of inheritance or perpetuity in deeds for the passing of a fee simple absolute title.

The *First New Jerusalem Church case* was decided in 1941 by the Court of Appeals of Cuyahoga County relying on both the *Copps Chapel case* and the *Embleton case*. Moreover, on June 11, 1941, the Supreme Court overruled a motion to certify

Errata:—The twelfth line in the second paragraph (above) should read "any kind as the grantor *of*" instead of "or."

this judgment of the Court of Appeals. Although we know that denial of a motion to certify does not constitute approval of the opinion of the Court of Appeals we do know that the Supreme Court has had an opportunity to pass upon the question crucial here and refused to do so.

The syllabus of the Court of Appeals reads:

"4. Such a deed conveying the land to the 'trustees * * * and their successors in office forever, to be held in trust' for the church, and providing that the 'land is to be returned to the original owners' in the event that it should ever cease to be used for church purposes, conveys an absolute fee-simple title to the trustees.

"5. In such case, the grantors must, in order to create a reverter or forfeiture of the estate reinstating the fee in them or their heirs, use words in the reverter clause of equal dignity and force to those of the grant, embodying the conception of perpetuity and succession."

Had the motion to certify in *First New Jerusalem Church* not been made and overruled I would find for a reversion in the heirs of Joseph E. Clark, of whom plaintiff is one, in accord with the traditional common law concept. As it is, however, Ohio law as enunciated to this date requires a finding that a fee simple absolute vested in the Carryall Township District School Board, defeasible only during the life of the grantor, should this real estate cease to be used for school purposes.

Plaintiff maintains that this controversy is governed by the rule of *Schurch* v. *Harraman*, 47 Ohio App., 383, 191 N. E., 907, 40 O. L. R., 303 (1933), and that this 1884 deed of plaintiff's father by limitations as to use created a fee simple determinable in the grantee. This estimable opinion in the *Schurch case*, authored by the late Judge Charles A. Guernsey of our own Court of Appeals, however, distinguished the 1871 deed in *Copps Chapel* on the basis that the granting clause there was as to certain specified trustees a quitclaim "... *unto the said grantees to their heirs and assigns forever* ... and limited to use for church purposes in the habendum while in *Schurch* it was similarly to trustees" "... *of Grace Evangelical Lutheran Church as long as used for church purposes ...*" followed by the

242

description and a habendum limited to church purposes and set out in an 1888 deed. The granting clause contained *no words of inheritance or perpetuity.*

All of these deeds were executed long before 1925 and while appropriate words of inheritance or perpetuity in the granting clause were necessary to convey a fee simple absolute estate.

Our deed is to a body politic and corporate (see Section 3313.17, Revised Code), and the grant runs to "... *the said Carryall Township District School Board their successors in office forever for school purposes* ... followed by an habendum providing for a reverter in the individual grantor alone omitting all mention of heirs and limiting use to school purposes.

"... Their successors in office forever ..." when referring to a body politic and corporate are certainly words of perpetuity and for centuries have been adequate to convey fee simple absolute estates to corporate bodies. Instant deed differs from *Copps Chapel* only in that it adds immediately following the words of perpetuity in the granting clause "... for school purposes ..." followed by a description and a repeated limitation to school purposes in the habendum clause. But I fail to see how an ineffective limitation in the habendum following the grant of a fee simple absolute under the rule of Copps Chapel can be cured by repeating the same words before the description so long as both limiting phrases follow the words of inheritance or perpetuity which were, admittedly, always sufficient—standing alone— to convey a fee simple absolute. In using words to limit a fee simple absolute, I am unable to visualize how two times nothing can equal something.

*Board of Education of Lebanon Village School District* v. *Hollingworth,* 56 Ohio App., 95, 10 N. E. (2d), 25, 9 Ohio Opinions, 1, 23 Ohio Law Abs., 81 (1936), distinguishes *Copps Chapel* on the basis of an intention inferred from the words of the deed in the same manner as *Copps Chapel* distinguished *Sperry* v. *Pond.* This is to make the words "and no longer" a catalyst with magical powers while saying they make no difference. Besides, *First New Jerusalem Church* was decided five years later.

Whatever of consequence I may know of the law of real

property I learned at the feet of a great teacher, the late Dean Arthur T. Martin, the Ohio State University College of Law. Since reviewing the authorities in this case I now feel I finally understand his vehement disagreement with the majority in the *Copps Chapel case* and his comment to me in 1938 that— "In my opinion the decision did two things. It decided the case before it and it introduced a mischief into the land law of Ohio which will plague the bench and bar for years."

For me the Dean's 1938 prediction is fully corroborated by the 1955 article of Roy B. Meade, Esquire, of the Akron Bar, entitled, *"Reverters and Determinable Fees—Trend of Ohio Decisions,"* 55 Ohio Opinions, 355. After a meticulous review of the cases, he concludes with this paragraph:

"If there are any rules that can be followed, they are probably set forth as clearly as is possible in the opinion in the *Schurch et al., Trustees* v. *Harraman case.* However it does not seem safe to assume that there are any set rules."

Although personally I now have come to agree with Dean Martin I must conclude that the mischief, if any, in the Ohio law is not mine and is not for me to undo.

Judgment will be rendered for defendant.

Counsel may prepare an appropriate journal entry.