FIRST UNIVERSALIST SOCIETY OF NORTH ADAMS *vs.*
PATRICK J. BOLAND.

Berkshire.    September 14, 1891. — January 6, 1892.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Determinable Fee — Remoteness — Title.*

The form of estate known as a qualified or determinable fee still exists in this Commonwealth.

Real estate was conveyed to a religious society to hold " so long as said real estate shall by said society or its assigns be devoted to the uses, interests, and support of " certain religious doctrines, " and when said real estate shall by said society or its assigns be diverted from the uses, interests, and support aforesaid to any other interests, uses, or purposes than as aforesaid, then the title of said society or its assigns in the same shall forever cease, and be forever vested in the following named persons," among whom was designated the grantor. *Held*, that a qualified or determinable fee only was conveyed to the society, with a limitation over which was void for remoteness, thus leaving the possibility of a reverter in the grantor and his heirs; and that the society could not convey a clear title.

BILL IN EQUITY, filed in the Superior Court, for the specific performance of an agreement by the plaintiff to sell and by the defendant to purchase land.   The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on an agreed statement of facts; and was as follows.

On April 9, 1842, Joseph D. Clark and twenty-five or thirty other persons formed the plaintiff society, with a constitution which adopted as the basis of its religious faith the profession of belief accepted by the General Convention of the Universalists at its session at Winchester, New Hampshire, in 1803, and provided for three trustees to be the executive power of the society and to see that all votes of the society were carried out. On April 3, 1854, Clark for the expressed consideration of nine hundred dollars conveyed the land in question by a deed containing the usual covenants to the plaintiff society, " to have and to hold to the said First Universalist Society and their assigns, so long as said real estate shall by said society or its assigns be devoted to the uses, interests, and support of those doctrines of the Christian religion embraced in the Confession of Faith adopted by the General Convention of Universalists held at Winchester, New Hampshire, in the year eighteen hundred and three. And when said real estate shall by said society or its assigns be diverted from the uses, interests, and support aforesaid to any other interests, uses, or purposes than as aforesaid, then the title of said society or its assigns in the same shall forever cease, and be forever vested in the following named persons, and such persons shall be the legal representatives of any of such persons at the time the same so vests as aforesaid in the following undivided parts and proportions, to wit: to Stephen M. Whipple $\frac{140}{1000}$, Alanson Cady $\frac{140}{1000}$, John F. Arnold $\frac{114}{1000}$, Joseph D. Clark $\frac{70}{1000}$ [Here followed the names of thirty-seven others after each of which was placed a fraction in thousandths]. To have and to hold the above granted premises, with the privileges and appurtenances thereto belonging, to the said grantees, their heirs and assigns, to them and their use and behoof forever, as aforesaid."

On December 16, 1885, Clark executed and delivered to the plaintiff society a quitclaim deed of the same premises, " intending hereby to vest in said society absolutely and in fee simple the title to said premises free and discharged of all the conditions, restrictions, and restraints as to the uses, interests, and purposes for which said premises are to be used and enjoyed by said society, as set forth in my said deed of April 3d, 1854, and to enable said society to sell, lease, or otherwise use and dispose

of said premises to all intents and purposes as if no restraints or contingent interests had been created by my said deed or referred to therein."

Upon the land so conveyed to the plaintiff a church was erected, which from the time of its erection to the present time has been occupied and used for religious worship by the plaintiff society, without any change in the profession of faith mentioned in the deed of April 3, 1854, or in its constitution. The agreement in question was made by the parties on April 20, 1891, but the defendant, upon the tender of a deed to him from the plaintiff, refused to carry it out, on the ground, among others, that the plaintiff society never was seised in fee simple, but at most obtained only a qualified or conditional fee, and could not convey a good and clear title.

The parties having ascertained that between April 3, 1854, and December 16, 1885, Clark had gone into bankruptcy, the plaintiff waived any rights which it might have under the deed of December 16, 1885, and relied for its title upon the deed dated April 3, 1854.

*A. E. Denison,* for the plaintiff.

*M. E. Couch,* for the defendant.

ALLEN, J. The limitation over, which is contained in the deed of Clark to the plaintiff in 1854, is void for remoteness. *Wells* v. *Heath,* 10 Gray, 17, 25, 26. *Brattle Square Church* v. *Grant,* 3 Gray, 142, 152. The fact that the grantor designated himself as one of the persons amongst many others to take under this limitation, does not have the effect to make the limitation valid. He was to take with the rest, and stand upon the same footing with them.

Where there is an invalid limitation over, the general rule is that the preceding estate is to stand, unaffected by the void limitation. The estate becomes vested in the first taker, according to the terms in which it was granted or devised. *Brattle Square Church* v. *Grant,* 3 Gray, 142, 156, 157. *Sears* v. *Russell,* 8 Gray, 86, 100. *Fosdick* v. *Fosdick,* 6 Allen, 41, 43. *Lovering* v. *Worthington,* 106 Mass. 86, 88. Lewis on Perpetuity, 657. There may be instances in which a void limitation might be referred to for the purpose of giving a construction to the language used in making the prior gift, provided any aid could be

gained thereby. In the present case, we do not see that any such aid can be gained. The estate given to the first taker does not depend at all upon the validity or invalidity of the limitation over, and the construction of the language used is not aided by a reference thereto.

The grant to the plaintiff was to have and to hold, etc., "so long as said real estate shall by said society or its assigns be devoted to the uses, interests, and support of those doctrines of the Christian religion," as specified. "And when said real estate shall by said society or its assigns be diverted from the uses, interests, and support aforesaid to any other interests, uses, or purposes than as aforesaid, then the title of said society or its assigns in the same shall forever cease, and be forever vested in the following named persons," etc. These words do not grant an absolute fee, nor an estate on condition, but an estate which is to continue till the happening of a certain event, and then to cease. That event may happen at any time, or it may never happen. Because the estate may last forever, it is a fee. Because it may end on the happening of the event, it is what is usually called a determinable or qualified fee. The grant was not upon a condition subsequent, and no re-entry would be necessary; but by the terms of the grant the estate was to continue so long as the real estate should be devoted to the specified uses, and when it should no longer be so devoted, then the estate would cease and determine by its own limitation. Numerous illustrations of words proper to create such qualified or determinable fees are to be found in the books, one of which, as old as *Walsingham's case*, 2 Plowd. 557, is "as long as the church of St. Paul shall stand." *Brattle Square Church* v. *Grant*, 3 Gray, 142, 147. *Easterbrooks* v. *Tillinghast*, 5 Gray, 17. *Ashley* v. *Warner*, 11 Gray, 43. *Attorney General* v. *Merrimack Manuf. Co.* 14 Gray, 586, 612. *Fifty Associates* v. *Howland*, 11 Met. 99, 102. *Owen* v. *Field*, 102 Mass. 90, 105. 1 Washb. Real. Prop. (3d ed.) 79; 2 Washb. Real Prop. (3d ed.) 20, 21. 4 Kent Com. 126, 127, 132, note. 2 Crabb, Real Prop. §§ 2135, 2136. 2 Flint. Real Prop. 230, 232. Shep. Touchst. 121, 125.

A question or doubt, however, has arisen, though not urged by counsel in this case, whether after all there is now any such estate as a qualified or determinable fee, or whether this form of

estate was done away with by the statute *Quia Emptores.*   See
Gray, Rule against Perpetuities, §§ 31–40, where the question is
discussed and authorities are cited.   We have considered this
question, and whatever may be the true solution of it in Eng-
land, where the doctrine of tenure still has some significance,
we think the existence of such an estate as a qualified or de-
terminable fee must be recognized in this country, and such
is the general consensus of opinion of courts and text writers.
*Jamaica Pond Aqueduct* v. *Chandler,* 9 Allen, 159, 168.   *Leon-
ard* v. *Burr,* 18 N. Y. 96.   *Gillespie* v. *Broas,* 23 Barb. 370.
*State* v. *Brown,* 3 Dutch. 13.   *Henderson* v. *Hunter,* 59 Penn.
St. 335.   *Wiggins Ferry Co.* v. *Ohio & Mississippi Railway,* 94
Ill. 83, 93.   1 Washb. Real Prop. (3d ed.) 76–78.   4 Kent Com.
9, 10, 129.   See also, of English works in addition to citations
above, Shep. Touchst. 101 ; 2 Bl. Com. 109, 154, 155 ; 1 Cruise
Dig. tit. 1, §§ 72–76 ; 2 Flint. Real Prop. 136–138 ; 1 Prest. Est.
431, 441 ; Challis, Real Prop. 197–208.

Since the estate of the plaintiff may determine, and since there
is no valid limitation over, it follows that there is a possibility of
reverter in the original grantor, Clark.   This is similar to, though
not quite identical with, the possibility of reverter which remains
in the grantor of land upon a condition subsequent.   The exact
nature and incidents of this right need not now be discussed, but
it represents whatever is not conveyed by the deed, and it is the
possibility that the land may revert to the grantor or his heirs
when the granted estate determines.   Challis, Real Prop. 31,
63–65, 153, 174, 198, 200, 212.   1 Prest. Est. 431, 471.   *Newis* v.
*Lark,* 2 Plowd. 403, 413.   Shep. Touchst. 120.   2 Washb. Real Prop.
(3d ed.) 20, 579.   4 Kent Com. 10.   *Smith* v. *Harrington,* 4 Allen,
566, 567.   *Attorney General* v. *Merrimack Manuf. Co.* 14 Gray, 586,
612.   *Brattle Square Church* v. *Grant,* 3 Gray, 142, 147–150.   *Owen*
v. *Field,* 102 Mass. 90, 105, 106.   *Gillespie* v. *Broas,* 23 Barb. 370.
Gray, Rule against Perpetuities, §§ 33, 34, 39, and cases cited.

Clark's possibility of reverter is not invalid for remoteness.
It has been expressly held by this court, that such possibility of
reverter upon breach of a condition subsequent is not within the
rule against perpetuities.   *Tobey* v. *Moore,* 130 Mass. 448.   *French*
v. *Old South Society,* 106 Mass. 479.   If there is any distinc-
tion in this respect between such possibility of reverter and that

which arises upon the determination of a qualified fee, it would seem to be in favor of the latter. But they should be governed by the same rule. If one is not held void for remoteness, the other should not be. The very many cases cited in Gray, Rule against Perpetuities, §§ 305–312, show conclusively that the general understanding of courts and of the profession in America has been that the rule as to remoteness does not apply; though the learned author thinks this view erroneous in principle.

We have no occasion to consider whether the possibility of reverter would or would not pass to an assignee in bankruptcy or insolvency, because the plaintiff expressly waived any right it might have under the second deed from Clark, and we have not, therefore, felt at liberty to consider the second deed, and have been confined to the construction and effect of the first deed. See *Rice* v. *Boston & Worcester Railroad,* 12 Allen, 141. This being so, the plaintiff's title must be deemed imperfect, and the entry must be,                              *Bill dismissed.*