UNION TRUST COMPANY *v.* ROSSI.

Opinion delivered December 2, 1929.

*Clayton & Cohn,* for appellant.

*Lee Miles, R. P. Taylor* and *S. S. Jefferies,* for appellee.

KIRBY, J., (after stating the facts). Appellant insists for reversal, first, that the court erred in holding that the election of the widow to renounce the provisions of the will and take her share of the estate as dower, etc., under the intestate laws instead, caused in legal contemplation a termination of her life estate and acceleration of the other estates dependent thereon, equivalent to its termination by the death of the life tenant.

The purpose of construction of a will is to ascertain the intention of the testator from the language used as

it appears from consideration of the entire instrument, and, when such intention is ascertained, it must prevail, if not contrary to some rule of law, the court placing itself as near as may be in the position of the testator when making the will. *Booe* v. *Vinson,* 104 Ark. 439, 149 S. W. 524; *LeFlore* v. *Hamlin,* 153 Ark. 421, 240 S. W. 712.

Our statute provides (§ 3528, C. & M. Digest) that jointures, devises and pecuniary provisions in lieu of dower may be forfeited by the woman for whose benefit they are made in such cases as would forfeit dower, and, upon such forfeiture, the estate conveyed for jointure and every pecuniary provision so made shall immediately vest in the persons or his legal representative in whom they would have vested on the determination of her interest therein by the death of such woman.

In 28 R. C. L. 333, it is said: "Ordinarily the election of the widow to take against the will has the effect of accelerating any remainder limited to take effect after a life estate given to her. The election of a widow to take against her deceased husband's will is equivalent to her death as respects the payment of legacies and the distribution of that part of the estate which is to be distributed under the will upon the happening of that event."

In the note to *Young* v. *Harris,* 5 A. L. R. 477, it is said: "The doctrine of acceleration proceeds upon the supposition that, though the remainder is, in terms, not to take effect in possession until the decease of the tenant for life, it is, in point of fact, to be read as a limitation of a remainder to take effect in every event which removes the prior estate out of the way. When, therefore, it appears that possession of the remainderman is postponed solely for the purpose of letting in the life estate, it is presumably the intention of the testator that a renunciation of the life estate shall be considered as equivalent to its termination by the death of the life tenant, and that the beneficiaries entitled in remainder

shall enter into its enjoyment at once. * * *. In other words, where the purpose of the testator in postponing distribution is merely to let in the precedent estate, the premature determination of such estate will have the effect of also terminating the contingency to which the gift over is subject, which, though nominally contingent upon surviving the life tenant, is to be read as contingent upon surviving the termination of the precedent estate." See also *Sherman* v. *Flack,* and note, 5 A. L. R. 456, 283 Ill. 457, 119 N. E. 293; *American National Bank* v. *Chapin,* and note, 17 A. L. R. 305, 130 Va. 1, 107 L. E. 636.

The will devises a life estate, in clause 3, in the enjoyment of the home occupied by the wife and the testator at the time of his death, and directs that she shall have the use and enjoyment thereof, without any cost or expense to her, in addition to the $250 per month net directed to be paid her. It is true it also provides, in the last clause, that it is the testator's desire that no part of his real estate be disposed of until after the death of his wife, Emma Rossi, and then only subject to the approval and direction of his adult male legatees or a majority of them, but that no such election shall operate to delay the payment of or defeat any gift made in the will. The testator knew, however, that an election by the widow against the will and a renunciation by her of its provisions would terminate the life estate he was creating in her by the will, and upon which the enjoyment of the remainders depended, and he made no provision to meet such contingency. The provision of the life estate was necessarily for the benefit of the widow, rather than for any independent purpose of postponing the disposition of the estates dependent upon her death, and, although he expressed a desire that no part of his real estate should be disposed of until after the death of his wife, and then only subject to the approval and direction of his adult male legatees or a majority of them, he also said: "But no such election shall operate to delay the payment of or defeat any gift heretofore made herein."

It thus appears from the construction of the whole instrument that the enjoyment of the estates by the remaindermen was postponed solely for the benefit of the widow, and, she having elected against the will and renounced its provisions made for her life, it must be held presumably the intention of the testator that such renunciation of the life estate is equivalent to its termination by the death of the life tenant, and that the beneficiaries entitled in remainder should enter into its enjoyment at once. It follows that no error was committed in the holding of the court in that regard.

Neither was error committed in holding the provision of the will creating a trust fund for the perpetual maintenance of the graves of the testator and his wife void, notwithstanding the court gave as reasons for such holding that this was a provision for the benefit of the widow, who, having renounced the provisions of the will, was entitled to no benefit or enjoyment of it. Such provision was void as offending against the rule against perpetuities. Section 178, Sizer's Pritchard, Law of Wills, etc; *Read* v. *Williams,* 125 N. Y. 560, 26 N. E. 730, 21 Am. St. Reports 748; *Bates* v. *Bates,* 134 Mass. 110, 45 Am. Rep. 305; *Fite* v. *Beasley,* 12 Lea 328. It is doubtless true, however, that the testator could have provided for the burial of his own and the body of his wife in a cemetery established for taking perpetual care of the graves of those interred therein, since that would not have involved an unlawful suspension of the ownership of personal property.

No complaint is made of the decree of the chancellor ordering the disposition of the share devised to Maria Menna in the estate of the testator, which also appears to be correct.

The court, however, erred in attempting to lift the estate out of the probate court, the debts of the estate not being shown to have been paid or the administration dispensed with under the statute (sec. 1, C. & M. Digest), and proceed to the administration and disposition of it

after the special matter which called into exercise its peculiar power was disposed of, and it should have ordered the remainder of the proceeds of the land sold, after the payment of the widow's dower, paid over to the executor, and left the cause in the probate court for further necessary proceedings in the regular course of the administration, in accordance with the law and decree construing the will. *Robinson* v. *Black,* 84 Ark. 92, 104 S. W. 554; *Hawkins* v. *Lane,* 48 Ark. 544, 3 S. W. 821; *Laws* v. *Wheeler,* 171 Ark. 514, 284 S. W. 775.

For the error designated the cause will be reversed, and remanded with directions to enter a decree not inconsistent with this opinion. It is so ordered.