Fleming. *v.* Blount.

4-6362                                             151 S. W. 2d 88

Opinion delivered May 19, 1941.

*Harrelson & Harrelson,* for appellant.

*Dennis W. Horton* and *Roy D. Campbell,* for appellee.

SMITH, J.   The decision of the question presented on this appeal is determined by the construction of the last will and testament of John Homer Blount, which, in its entirety, reads as follows:

"Last Will and Testament of John Homer Blount.

"In the name of God amen; Being of sound mind and disposing memory I make this my last will and testament.

"Item (one) I desire at my death should I owe any debts to be paid out of my fraternal insurance.

"Item (two) I give and bequeath to my son, J. H. Blount, Jr., one-third of my real estate and one-third of my life insurance, fraternal insurance and one-third of my personal property.

"Item (three) I give and bequeath to son, John Scott Blount, one-third of real estate and one-third of my life insurance, fraternal insurance and one-third of my personal property.

"Item (four) I give and bequeath to my daughter, Elizabeth Louise Blount, one-third of my real estate and one-third of my life insurance, fraternal insurance and one-third of my personal property.

"Item (five) I desire and will that none of my real estate shall be divided or sold before the year 1950, and if either of the above named children break or attempt to break this will of mine he or she shall be disinherited and be given the amount of ten dollars, instead of one-third interest in my estate as named herein above.

"Item (six) My object in having the real estate remain intact until 1950, is to make each child invest his or her income from this will to acquire his or her individual property.

"Item (seven) In the event that I should die before either of the above children graduate from college course, each of the above named children shall be allowed one-third of the income from my estate to go to school at least nine months every year until each one has completed a college course. In the event that either child fails or refuses to go to school until he or she has completed the college course named heretofore, then he or she shall not be allowed one-third interest or any part of the income heretofore named for educational purposes.

"In case either of said children should die, then the other two are to share equally in the division of my estate and if any two should die, the living child shall have the entire estate.

"We the undersigned witnesses to the foregoing will do truly certify that the testament the said John Homer Blount signed said will in the presence of each one of

us, all of us being together at the time, and declared the same to be his last will and testament and requested each one of us to witness the same and we each severally signed the same as witnesses in the presence of each and in the presence of the testator.

"Witness our hands this, the first day of August, 1919.

"Witnesses:

"John Homer Blount,
"J. O. Winford,
"M. P. Remley."

At the time of the execution of this will the testator was a widower, and none of his three children—two sons and a daughter—had completed their education to the satisfaction of their father. He later married, and was survived by these three children and his second wife, to whom no child was born.

These children, who are now of full age, and the widow entered into a contract with appellant to convey a tract of land owned by the testator at the time of his death. An abstract of the title to the land disclosed this will, upon which the title depends, and appellant declined to accept the tendered deed upon the ground that it would not convey the merchantable title for which the contract of sale provided. Suit was brought to enforce this contract, and a demurrer to the complaint was overruled and appellant was directed to accept the deed tendered and pay the purchase price, from which decree is this appeal.

It is not contended that this will was revoked by the marriage of the testator subsequent to its execution under the provisions of § 14520, Pope's Digest, for the reason that no issue was born to the second marriage. But the will does not exclude the widow from the interest she would have taken had her husband died intestate. The devisees, however, take subject to the will, modified, as it must be, by the subsequent marriage of their father. The insistence is that the widow and these devisees, together, take the entire fee simple title, and that as all of them joined in the execution of the deed tendered there is no one who may complain of its sufficiency, for the

reason that, subject to the payment of the debts as provided in item one (all of which have been paid), the children, as devisees under items two, three and four, take title in fee simple, subject only to the marital rights of the widow.

To sustain this contention the case of *Bernstein* v. *Bramble,* 81 Ark. 480, 99 S. W. 682, 8 L. R. A., N. S., 1028, 11 Ann. Cas. 343, is chiefly relied upon. The will there construed read in part as follows: "All the rest, residue and remainder of my estate, real as well as personal, and wheresoever situated, I hereby devise, give and bequeath to my beloved wife, Minna Elle, to have and to hold the same in fee simple forever. But in the case of the death of my beloved wife it is my will that all the estate then remaining and not disposed of by her by a last will or other writing shall pass to my said brother, Mortiz Elle, and my sister, Henriette Bernstein, or their heirs in equal parts."

It was there held that the property mentioned was devised to the first taker in fee simple, and that the limitation over to another at the former's death was void for repugnancy. This rule of construction, while hoary with age, is one which usually operates to defeat the intention of the testator when the will is read in its entirety and the intention of the testator gathered from its four corners.

But the authority of that case need not be impaired to ascertain the testator's intention in the present case. There, the testator devised to the first taker title in fee simple, to be held forever. Not so here. Subject to and after the payment of his debts, the testator designated the *quantum* of his estate which each of his children should take, each a third, both of his real estate and personal property. But for what purpose and upon what condition? We must read the will in its entirety to find the answer to that question and to determine just what the estate and interest is which items two, three and four devise.

It was said in the case of *Piles* v. *Cline,* 197 Ark. 857, 125 S. W. 2d 129, as has been said in many other cases, that, in construing a will it is the duty of the court to

ascertain, from a consideration of the language employed in the will, the intention of the testator, and to give effect to that intention, and, in so doing, the will should be read in its entirety and effect given, if possible, to all the language employed. In this Piles case, it was further said: "Wills cannot ordinarily be written in a single sentence, and we must, therefore, read a will in its entirety and give effect, if we may, to all the language which the testator has employed. When we have done so, if the intention of the testator is clear, we have only to declare the intention thus expressed. If, however, the language of the will is ambiguous and the intention of the testator is not clear, we must invoke the aid of settled rules of construction with reference to which the will is said to have been written, although, in fact, the testator may have been wholly ignorant of these rules of construction. The application of these rules of construction may, in some instances, operate to defeat the actual intention of the testator, but, if so, the fault lies with him in failing to clearly express his intention."

In the Bernstein case, *supra,* Judge BATTLE quoted from Underhill on the Law of Wills, vol. 2, § 689, as follows: " 'It is the rule that where property is given in clear language *sufficient to convey an absolute fee,* the interest thus given shall not be taken away, cut down or diminished by any subsequent vague and general expressions. This rule is applied where a fee is given either expressly by words of limitation, as to a person and his heirs, or by implication by a devise in general language through the operation of the modern statutes. If it is clearly the intention of the testator that the devisee *shall own the fee simple,* his subsequent language, directing that what remains of the property at the death of that devisee shall devolve upon a particular person or class of persons, will not cut down the fee to a life estate. The fee, being vested by express and appropriate words, will not be diminished by subsequent words of a vague and general character which are absolutely repugnant to the estate granted. . . .' "

We think there is no difficulty in ascertaining the testator's intention when the will is read in its entirety.

The testator used no vague and general expressions which operate to reduce the estate devised. The language employed is very clear and very definite, and does not reduce the estate from an estate in fee to a lesser estate. On the contrary, the language used explains the estate devised in items two, three and four. It might be said that if these items two, three and four stood alone, and there was nothing else in the will to explain and limit the estate and interest devised, they would be sufficient to devise a fee simple estate. But they do not stand alone, and the other provisions of the will which explain the nature and extent of the estate devised may not be ignored, if we are to give effect to the manifest intention of the testator, as plainly expressed in the language which he employed.

Item five directs that the estate be not divided or sold before 1950, a date just eleven years later than the date of the testator's death, of which limitation more will presently be said. It is urged that this is a mere admonition of a precatory nature. But it does not appear that the testator was merely advising; he intended to make the provisions of his will effective and mandatory and, to that end, resorted to the most effective means he could employ, by providing that any attempt to defeat his purpose by contesting the will should result in disinheriting the person who made that attempt.

Items six and seven make it certain, if it did not otherwise so appear, that the provisions of item five are not precatory in their nature, and explain why the estate should remain intact until 1950. He sought to compel his children to be frugal and to acquire property by their own endeavors. He evidently thought they could better do so if they were educated, and he made compulsory provisions for that purpose. He could not, of course, after his death, compel his children to complete a college course, but he could, and did, impose a penalty upon any child who failed to do so, this being to deprive the disobedient child of the one-third interest in the revenues of the estate which the testator intended should be employed in taking a college course.

That the testator did not intend to devise a fee simple title to the third interest to each child further appears from the provisions of the will immediately following item seven reading as follows: "In case either of said children should die, then the other two are to share equally in the division of my estate and if any two should die, the living child shall have the entire estate."

When we have read the will from its four corners, we think the purpose of the language just quoted was to make more effective the provisions of items six and seven. The testator did not intend that his estate should be sold or divided until 1950, and he sought to prevent his children from defeating that purpose by providing that if one or if two of the children should die, the survivor or survivors "shall have the entire estate." This limitation upon the interest devised in items two, three and four remains effective until 1950, at which time if all the children shall have survived, they will then, but not before, take title in fee simple to one-third each of the estate, and may divide the lands and sell them.

The will construed in the case of *Bowen* v. *Frank,* 179 Ark. 1004, 18 S. W. 2d 1037, read in part as follows: "Item four. I hereby give, devise and bequeath to my seven children and legal heirs, to-wit, Charles F., Robert B., John L., Walter A., Clara M., Elizabeth G., and Lenora E. Frank, now Mrs. S. A. Bowen, all of my property, real, personal and mixed, wheresoever situated, not already disposed of, which I now own or may hereafter acquire, and of which I may die seized and possessed, absolutely and in fee simple, and in equal shares. The division shall be made by three commissioners to be appointed by my said children, and the lots and parcels of land so divided shall be drawn for by them, and any difference in the valuation be settled among themselves. The property of my daughters, however, shall be held and owned by them for their sole and separate use and enjoyment, free from the debts and contracts of any husbands, for and during their natural lives, with remainder in fee to their children, and in default of children surviving either of them, then to my children who shall then be living, their heirs and assigns forever, and should

any of my sons die without issue, his or their share shall also revert to my children then living, their heirs and assigns forever.''

The first sentence of this item devised to the testator's four sons and three daughters ''all of my property, real, personal and mixed, wheresoever situated, . . ., absolutely and in fee simple, and in equal shares.''

This will was twice construed by the Supreme Court of Tennessee in the cases of *Frank* v. *Frank*, 120 Tenn. 569, 111 S. W. 1119, and *Frank* v. *Frank*, 153 Tenn. 215, 280 S. W. 1012.

We approved the construction of this will given it by the Supreme Court of Tennessee, and, in doing so, said: '' 'In *Frank* v. *Frank*, 120 Tenn. 569, 111 S. W. 1119, the will of J. F. Frank was construed to mean that the four sons of J. F. Frank took an estate in fee, and the three daughters, Clara M. Frank, Elizabeth G. Frank and Mrs. Lenora F. Bowen, each took life estates in the property therein devised, with remainder (1) to any child or children that either might leave surviving her; (2) in default of child or children surviving any daughter, to the brothers and sisters living at her death. . . . The remaindermen are declared by the will as construed in *Frank* v. *Frank*, 120 Tenn. 569, 111 S. W. 1119, to be the issue of each devisee, and no issue, the survivor of the four brothers and three sisters.' ''

The construction of the will in the instant case is easier and more certain. As we have said, items two, three and four merely designate the share of the estate which each child should have, but it was not said that interest was given in fee, and we must read the entire will to determine for what purpose and upon what conditions this one-third interest to each child was devised.

In Schouler on Wills, Executors and Administrators (6th Ed.), vol. 2, § 898, pp. 1031-34, it is said: ''A will should be construed as a whole to carry out testator's intention, and all parts should be compared with and read in the light of the others, in an effort to harmonize all parts, and his whole plan considered, and every word given effect if possible, including the preamble, and this

rule like other rules of construction can only be applied when the construction of the will is doubtful. The court should look to the whole will and ascertain whether the intention of the testator appears with reasonable certainty there before attempting to resort to rules of construction for aid in construing a certain clause of the will. In the same way all the provisions of a codicil must be construed together.''

The provisions of the will that the estate shall not be divided or sold until 1950 does not violate the rule against perpetuities, and is not contrary to any law or any public policy, and we conceive no reason why it should not be upheld as valid. Such provisions in wills are quite common, and are uniformly enforced. The restriction against sale or partition is limited to the period of only eleven years, and is confined to persons all in being, and we think the limitation was one not beyond the power of the testator to impose. *Moody* v. *Walker,* 3 Ark. 147; *Grissom* v. *Hill,* 17 Ark. 483; *Clark* v. *Stanfield,* 38 Ark. 347; *Cribbs* v. *Walker,* 74 Ark. 104, 85 S. W. 244; *Biscoe* v. *Thweatt,* 74 Ark. 545, 86 S. W. 432, 4 Ann. Cas. 1136; *Ward* v. *McMath,* 153 Ark. 506, 241 S. W. 3. See, also, *Union Trust Co.* v. *Rossi,* 180 Ark. 552, 22 S. W. 2d 370.

We conclude,, therefore, that the deed tendered appellant by the widow and devisees of the testator would not convey the merchantable title for which the contract of sale called, and the decree will, therefore, be reversed, and the cause remanded with directions to sustain the demurrer.