FLETCHER v. FERRILL.

4-9062                                      227 S. W. 2d 449

Opinion delivered February 6, 1950.

Rehearing denied March 20, 1950.

*Chas. F. Cole* and *W. D. Murphy, Jr.,* for appellant.

*Joe J. McCaleb* and *Goodwin & Riffel,* for appellee.

GEORGE ROSE SMITH, J. This case involves the construction of a deed executed in 1923, by which J. W. Fletcher conveyed to a Masonic Lodge certain business property in the city of Batesville. In the deed Fletcher first reserved a life estate in himself. He then provided that when the property came into the possession of the Lodge it should be used exclusively for the benefit of a specified orphans home and school, "and when it ceases to be so used, or when said home and school shall be moved from Batesville, Arkansas, said property shall revert to the heirs of the said J. W. Fletcher." The parties concede that this deed created a determinable fee in the Lodge. See *Taylor* v. *School Dist. No. 45 of Searcy County,* 214 Ark. 434, 216 S. W. 2d 789.

Fletcher died in 1930, leaving a will that named his widow, the principal appellant, as his residuary devisee. The Lodge took possession of the property upon Fletcher's death and used the rents for the benefit of the orphanage until 1948. In that year the orphanage ceased to exist, and the Lodge at once disclaimed any further interest in the property. The question now is whether the title then passed to the appellant as residuary devisee or to the forty-eight appellees, who are Fletcher's heirs under the statutes of descent and distribution. The chancellor decided in favor of the heirs, plaintiffs below.

The principal question is whether the language of the deed, "said property shall revert to the heirs of the said J. W. Fletcher," created *(a)* a possibility of reverter in Fletcher himself or *(b)* an executory limitation to Fletcher's heirs, which would become a possessory interest upon termination of the determinable fee. We must first decide, however, whether a possibility of reverter is an interest that can be devised by will in Arkansas; for, if it is not, then the appellant's claim under

the will obviously cannot be sustained. The early English cases held that a possibility of this kind cannot pass by will, but the opposite result has been reached in the great majority of American jurisdictions. Rest., Property, § 164, Comment *c,* and § 165, Comments *a* and *f.* This holding is practically uniform in states having a statute like ours, which empowers the testator to devise real property "and all interest therein." Ark. Stats. (1947), § 60-102. Unquestionably the American rule carries out the grantor's intention more often than does the English rule. That is, if a landowner should convey property to a school, to be held as long as used for school purposes, he would undoubtedly assume that he still had an interest in the land and would be dismayed to learn that he could not leave that interest to any one he pleased—that it must inevitably go to his heirs at law, regardless of his own wishes. Yet that would be his unhappy position under the English doctrine. We have no hesitancy in following the American cases and holding that the broad language of our statute permits the testator to devise a possibility of reverter.

Returning to the principal question, we think the deed created a possibility of reverter in Fletcher rather than an executory interest in his heirs. This inquiry really narrows down to whether the word "heirs" is here a word of limitation or one of purchase. If it is a word of purchase, then the appellees took by virtue of the deed itself and not by inheritance from Fletcher. But if the word is one of limitation the title passed first to Fletcher's estate and thence to the appellant as residuary devisee.

In holding that the word is one of limitation rather than of purchase we stress the fact that Fletcher reserved a life estate in himself. In those circumstances there was no occasion for him to use the customary phrase—"the property shall revert to the grantor and his heirs" (in which the word is clearly one of limitation)—for it was unnecessary for him to provide for a possible reverter during his own lifetime. Thus there is a marked similarity between a reversion to the grantor's heirs in a deed

that reserves a life estate and a reversion to the grantor *and* his heirs in a deed intended to transfer immediate possession.

Our holding in *Wilson* v. *Pharris*, 203 Ark. 614, 158 S. W. 2d 274, tends to support our present conclusion. There the grantor, after reserving a life estate in herself, conveyed to her daughter a life estate upon condition subsequent. The deed provided that upon the happening of the condition the property should revert "to the said grantor's heirs." We held that the grantor still owned the fee and could convey it during her life tenancy. This was of course a recognition that the right of re-entry was in the grantor at least during her lifetime.

Even if we should sustain the appellees' contention that in the case at bar the word "heirs" was used in the deed as a word of purchase, we should still have to decide the case in the appellant's favor. Under that construction the deed would vest a determinable fee in the Lodge, and upon termination of that estate the title would pass directly to the appellees, not by inheritance from Fletcher but by virtue of the executory limitation in the deed. The appellees would thus have had an executory interest in the property throughout the existence of the determinable fee. It is well settled, however, that such an executory interest is not a vested estate and therefore must vest within the period allowed by the rule against perpetuities. Gray, The Rule Against Perpetuities, 4th Ed., § 41; Simes, Future Interests, § 768; Rest., Property, § 44, Comment *o*, and § 229, Illustration 8. On the other hand, it is equally well settled that the retention by the grantor of a possibility of reverter does not offend the rule against perpetuities, even though the reverter may not take place for an indefinite period in the future. Gray, § 41; Simes, § 507; Rest., § 372.

The leading case on this point is quite similar to the present case, if Fletcher's deed be construed as containing an executory limitation to his heirs. In *First Universalist Society of North Adams* v. *Boland*, 155 Mass. 171, 29 N. E. 524, 15 L. R. A. 231, the deed provided that the grantee should hold the land as long as it should be

devoted to the doctrines of the Christian religion, and when it was diverted from that use the title should vest-in certain named persons. The court held that the limitation over was void for remoteness, and therefore a possibility of reverter remained in the grantor. We are not aware of any decision to the contrary. In the present case it is evident that the Lodge's determinable fee might have continued for a period far in excess of that allowed by the rule against perpetuities, and hence an executory limitation to Fletcher's heirs would necessarily be void. This leaves the possibility of reverter in the grantor, as an interest not conveyed by the deed. Thus it is clear that the appellant must prevail under either construction of this instrument.

The decree is reversed, and, as the title to real property is involved, the cause is remanded for the entry of a decree in accordance with this opinion.

HOLT and McFADDIN, JJ., concur.

ED. F. McFADDIN, Justice (concurring). The majority opinion holds: (1) that the wording in the deed made by Mr. Fletcher was insufficient to show his intent that the reversion should pass to his heirs, rather than to his estate; and (2) that even if the word "heirs" was a word of purchase, instead of limitation, still the appellees would lose under the application of the rule against perpetuities. I dissent from the first holding made by the majority, but agree with the second; hence this concurring opinion.

I believe that it was the purpose and intent of J. W. Fletcher, when he executed the deed on December 5, 1923, to create at that time what may be called "three estates": (a) a life estate in himself; (b) a remainder in the Grand Lodge, in trust for the Masonic Orphans Home; and (c) a reversion, on the failure of the trust, to the heirs at law of J. W. Fletcher. Concerning this (c) estate, I believe that the words in the deed, "shall revert to the heirs of said J. W. Fletcher" mean what they said. In short, I believe that the word "heirs" was used as a word of purchase, rather than of limitation. I am im-

pelled to this conclusion by the wording of the deed which, omitting caption, description, signature and acknowledgment, is as follows:

"In consideration of the benefits which have accrued to the community of Batesville, Arkansas, on account of and by reason of the Masonic Orphans Home and School of Batesville, Arkansas, and of Most Worshipful Grand Lodge of Arkansas Free and Accepted Masons, and for the pleasure and satisfaction to me and for the benefit of the present and future occupants of Batesville, Arkansas, Masonic Orphans Home and School, and to *carry out the wishes of Mrs. Fenton G. Fletcher, my deceased wife, I convey and warrant* unto the Most Worshipful Grand Lodge of Arkansas Free and Accepted Masons, the following described property, to-wit:"

(Here is description of property)

"That I, J. W. Fletcher, the grantor herein, does and shall retain during his natural life the exclusive right to and possession of said property and the entire control and management thereof and shall have and retain all the rents and profits from said property during said time as fully and completely as if he were absolute owner thereof, that said property when it comes into the possession of said Most Worshipful Grand Lodge of Arkansas, Free and Accepted Masons, shall be used solely and exclusively for the benefit of said Masonic Orphans Home and School of Batesville, Arkansas, and when it ceases to be so used, or when said Home and School shall be moved from Batesville, Arkansas, *said property shall revert to the heirs of the said J. W. Fletcher.* The Grantee herein when it comes into possession of said property shall have the right to rent or lease it for any legitimate purpose, but all the income from said rent or lease must accrue to and be used for the benefit of said Masonic Orphans Home and School of Batesville, Arkansas.

"WITNESS my signature this 5th day of December, 1923."

(Italics are our own.)

J. W. Fletcher said he was seeking to "carry out the wishes of Mrs. Fenton G. Fletcher, my deceased wife." The deceased wife certainly could not have intended that the reversion in the property should be willed by J. W. Fletcher to a subsequent wife because the first wife had no assurance that there would ever be a second wife. I think the wishes of the deceased wife—as stated in the consideration clause—carry over to the reversion clause: so I believe that it was J. W. Fletcher's intention to let the property revert to whomsoever his heirs might be at the time of the reversion; and that this deed is one of those infrequent instruments in which courts—to correctly effectuate the grantor's intentions—hold that the word "heirs" is a word of purchase, rather than of limitation.

But, having reached that conclusion, I am met with the rule against perpetuities which renders the reversion void. Such is the second holding made in the majority opinion; and with that holding I agree.

In 1923 when the deed was executed, J. W. Fletcher in effect attempted to convey to his heirs an estate in fee on condition: i. e., he conveyed the fee to whomsoever might be his heirs at law when the condition (i. e., the termination of the Masonic Orphans Home) became an actuality. That actuality might, or might not have happened "within the life or lives in being and twenty-one years and the period of gestation" from the date of the deed because no one could tell when, if ever, the Masonic Orphans Home would cease to exist. So the said heirs mentioned in the deed of December 5 might not receive the property within the period limited by the rule against perpetuities. Therefore, the conveyance to the "heirs" was and is void as offending against the perpetuities rule.

The point is made clear in 41 Am. Jur. 75, in § 31 of the Topic "Perpetuities and Restraints on Alienation." In that topic it is first pointed out:

"A possibility of reverter which remains in a grantor or his successor in interest, or in a testator's heirs or devisees, where there has been created a fee

simple determinable, is not subject to the rule against perpetuities. Thus, a conveyance of land to a school district upon condition that the land be used only for school purposes, the land to revert to the grantor if the district ceases to use the land for school purposes or uses it for any other purpose, does not violate the rule against perpetuities, as the possibility of reverter vests in the grantor, which he may convey and which descends to his heirs or which he may transmit by will.''

That foregoing quotation states the law as applied by this Court in such cases as: *Coffelt* v. *Decatur School District*, 212 Ark. 743, 208 S. W. 2d 1, and *Williams* v. *Kirby School District*, 207 Ark. 458, 181 S. W. 2d 488.

Then the Topic in 41 Am. Jur. 76 continues in this language:

"But if the instrument creating the determinable or conditional fee provides for a limitation over to a third person following the expiration of a determinable fee or the cutting off of a defeasible fee, the rule against perpetuities applies for the limitation over, sometimes called an executory limitation or conditional limitation, arises by virtue of the grant or devise and goes to a third person rather than merely remaining in the creator of the estate or his successors in interest. For example, it has been held that a devise of a house and land to deacons of a church and their successors forever, on condition that the minister or eldest minister of said church shall constantly reside in and dwell in said house during such time as he is minister of said church, and in case the same is not improved for that use only, then the bequest to be void and of no force, and said house and land then to revert to the nephew of testatrix, is a conditional limitation to the nephew, and not a devise on condition, and as such is void for being too remote."

The last quotation states the law applicable to the case at bar because, here, the reversion was to the heirs of J. W. Fletcher as words of purchase, and the said heirs were "third persons," the same as the nephew, within the foregoing quotation; and therefore the reversion was void as offending against the perpetuities rule.

For the reasons herein stated I concur with the result reached by the majority; and I am authorized to state that Mr. Justice HOLT joins me in this concurrence.

## ON REHEARING

GEORGE ROSE SMITH, J. In our original opinion we held that a possibility of reverter can pass by will in Arkansas. In a petition for rehearing the appellees insist that this holding conflicts with a statement in *LeSieur* v. *Spikes,* 117 Ark. 366, 175 S. W. 413, to the effect that a possibility of reverter is "not a disposable interest." Lest there be any uncertainty concerning land titles we add these additional paragraphs to make it perfectly clear that there is no inconsistency between the two opinions.

No will was involved in the *LeSieur* case. There the owner of land had conveyed to Dixie Lesieur and the heirs of her body, which of course left a possibility that the land would revert to the grantor if Dixie LeSieur left no bodily heirs. The grantor later executed a deed to a second grantee. We remarked that a possibility of reverter is not a disposable interest, but the statement was merely *dictum.* Dixie LeSieur in fact was survived by heirs of her body and therefore it was unnecessary to decide whether a possibility of reverter can be transferred by deed.

But even if the remark had not been *dictum* there would still be no conflict between that case and this one. Whether a possibility of reverter can be conveyed by *deed* depends upon the statutes and decisions governing *inter vivos* conveyances. At most the *LeSieur* case could have involved that situation only. But whether such a possibility can be devised by *will* depends upon the statute of wills. "Alienability and inheritability are distinct characteristics, which . . . are not necessarily coexistent, and . . . the existence of or absence of either characteristic is not determinative of the existence of or absence of the other. Some confusion seems to have arisen . . . from the failure clearly to recognize this fact." *Copenhaver* v. *Pendleton,* 155

Va. 463, 155 S. E. 802, 77 A. L. R. 324. In the case at bar we express no opinion as to whether a possibility of reverter (a) can be conveyed by deed or (b) can pass by inheritance under our statute of descent and distribution. We have merely followed the majority and better reasoned rule, that a statute of wills like ours permits the *devise* of such a possibility.

Rehearing denied.