HENDRIKSEN *v.* CUBAGE, TRUSTEE.

5-863                                      288 S. W. 2d 608

Opinion delivered February 27, 1956.

[Rehearing denied April 16, 1956.]

*Earl E. Hurt* and *Alfred Featherston,* for appellant.

*Witt & Witt* and *Wootton, Land & Matthews,* for appellee.

PAUL WARD, Associate Justice. This litigation involves the construction and effect of numerous deeds with respect to two hundred acres of land in Montgomery County intended for a recreation and reunion site for the lineal descendants of Drs. A. B. Clingman and Alfred Jones, now deceased.

Appellant, a daughter of Granville Jones, (who in turn was the son of the said Alfred Jones) instituted this suit in the Chancery Court of Montgomery County against certain Trustees of the Clingman-Jones Family Corporation to recover an undivided one-half interest in the two hundred acres under the terms of her father's will. The

trial court dismissed her complaint, and also made certain findings in favor of the defendants, as later noted, from which findings and decree the appellant prosecutes this appeal.

A historical background to this litigation is necessary to an understanding of the issues, and it can be briefly stated since there is no dispute about the essential facts.

Early in the year 1923 several of the descendants of Clingman and Jones decided to purchase some land for the purpose above mentioned, and pursuant to that purpose two hundred acres were purchased from J. R. Vaught and wife. The deed, dated September 3, 1923, was regular in form and the grantees were "Granville Jones, Isaac Jones, and Granville Cubage, Trustees." We will refer herein to this deed as "Deed No. 1." The proof shows that the above grantees were to hold the land in trust for the descendants and for the purpose heretofore mentioned.

Following the execution of the above deed, two more conveyances of the same land were made, but these two deeds need be mentioned only briefly since, with one exception noted later, they have little bearing on the questions here involved. On September 16, 1924, the above named Trustees conveyed the land to Isaac J. Jones in order to facilitate borrowing money to build a dam on the property, but this venture did not materialize at that time. We refer to this deed as "Deed No. 2." Later, at one of the numerous annual reunions of the families, it was decided to give Granville Jones (father of the appellant), a retired lecturer, the right to live on and use the proceeds of the land so that he might engage in writing at his leisure. For the above purpose Isaac Jones conveyed the land to Granville Jones, as directed by the family representatives. This is referred to as "Deed No. 3."

It appears that no one objected to Granville Jones having the use of the land for the purposes above mentioned, but one Trustee in particular thought such privilege should be differently conveyed. This result was

sought by the execution of "Deed No. 4." Consequently, on May 28, 1927, Granville Jones and his wife, Jessie Lyon Jones, executed a deed to "Granville Jones, Isaac Jones, Arthur Jones, Claude Jones, and Guilford Jones, as Trustees for themselves and other lineal descendants of Drs. A. B. Clingman and Alfred Jones, deceased, and to the successors of said Trustees," conveying said land. Following the description, the deed reads:

"With full right to any one of said lineal descendants to establish on said lands a summer cottage and use the same with all privileges thereto appertaining under such rules and regulations as may be prescribed by the said trustees, but specially reserving to the grantors, Granville Jones and Jessie Lyon Jones, all profits arising from concessions, summer resort privileges and other commercial and industrial use of the said land and of a dam and lake thereon known as 'Sylvan Lake' and other improvements heretofore placed on the said land of Granville Jones together with any future improvements incident to such use as a summer resort, when such improvements shall have been approved by a majority of the grantees as such Trustees, conditioned that no sale, transfer or assignment of these reservations, privileges and sources of revenue shall be made by the said Granville Jones and Jessie Lyon Jones, or either of them, without the approval of a majority of said Trustees expressed in writing."

It was, and is now, the contention of appellant that: (a) Deed No. 4 is void, as violative of the rule against perpetuities; (b) Her father, Granville Jones, therefore received a fee title to the land by virtue of deed No. 3, and; (c) Her father left her a one-half interest [also his wife a one-half interest] in the land by his last will which appears in the record. We are not in agreement with contention (b) above. Reserving, for the present, consideration of contention (a) above, it is clear from the testimony and the record, that appellant's father did not receive by deed No. 3 a fee title or a beneficial title. It is clear from the testimony that deed No. 3 was executed for the sole purpose of eventually achieving the results

attempted in deed No. 4. Both deeds were executed on the same day, indicating again that Granville Jones was not to receive any beneficial title in the land by virtue of deed No. 3. The record conclusively shows that the Trustees considered Granville Jones as a mere conduit of the legal title. We agree, therefore, with the trial court that Granville Jones did not have a fee title in the land at the time of his death, and that consequently his will passed no beneficial or equitable title. Our conclusion would be the same regardless of the validity or non-validity of deed No. 4.

A short time before this suit was filed (and after appellant had filed and dismissed a similar suit) appellees organized a corporation called the "Clingman-Jones Family Corporation." The articles of this corporation appear in the record, and its purpose is expressed in the third paragraph:

"SECOND: The nature of the business of the corporation and the objects or purposes to be transacted, promoted or carried on by it, are as follows, to-wit: To acquire, own, manage and control all properties held in common by the lineal descendants of Drs. A. B. Clingman and Alfred Jones."

In the record appears a deed, conveying said land, to this corporation. We designate this deed as "Deed No. 5," and will discuss it later.

At the close of the hearing, the court, after dismissing appellant's complaint, made two principal findings in favor of the appellees. (a) Deed No. 4 was reformed, and (b) title to the land was quieted in the Clingman-Jones Family Corporation. We shall now consider these findings in the order named.

(a) We think it is not material to the final disposition of this case, but also think the court was justified in making the reformation. All the reformation amounted to was to more clearly define the purposes and manner in which the grantees in deed No. 4 were to hold the land, and to provide for the succession of trustees. All changes

effected by the court were amply substantiated by the testimony.

(b)   We have concluded that the court erred in quieting title in the new corporation, because we think deed No. 5 (from the Trustees in succession to the Clingman-Jones Family Corporation) violates the rule against perpetuities.

Apparently appellees were concerned that deed No. 4 might violate the rule against perpetuities, and so sought to evade that probability by the substitution of deed No. 5.   We think no such result was achieved, and also think both deed No. 4 and deed No. 5 violate the rule.   Since both deeds contain practically the same essential phraseology we will confine our consideration to deed No. 5.

In deed No. 5 (to the Family Corporation) there is a regular granting clause, and then, after the description of the land, there is a "." and this paragraph:

"As a memorial, vacation, and reunion campsite for said lineal descendants, with full right of any one of said descendants to establish a summer cottage on said lands and use the same with all the privileges appertaining, under such rules as may be prescribed by the Directors of the Clingman-Jones Family Corporation."

Before reaching a conclusion regarding the rule against perpetuities, we find it necessary to construe the effect of said deed No. 5 as a whole and in particular as to the language quoted above in an attempt to determine whether the deed vested a fee simple title in the Corporation, or whether the deed was in effect a conveyance in trust.

If, under this deed, the Corporation received a vested title in fee with the right to dispose of the land, we would be compelled to conclude that the rule was not violated.

After a careful consideration of the testimony relative to the purpose of the family organization, the Articles of Incorporation, and the language used in the deed

to the Corporation, we are impelled to the conclusions hereafter set out.

By the use of the words "lineal descendants" of Clingman and Jones in deeds No. 4 and No. 5 we do not think the Trustees or the family organization meant to refer only to persons then living but rather to those who might be later born. We get the impression from the undisputed evidence that the family had no intention of limiting the recreation and reunion project to those persons who were alive. In fact that is the very issue which prompts this litigation on the part of appellees. There has never been any contention that the living lineal descendants of Clingman and Jones did not have the right to establish and maintain a recreation and reunion project.

Likewise we can draw but one conclusion from the Articles of Incorporation, and that is that the sole purpose and power of the Corporation was to hold the land [in trust] for the "lineal descendants of Drs. A. B. Clingman and Alfred Jones." It is perfectly apparent that the Corporation would have violated its purpose and trust if it had disposed of the land or had used it for the benefit of anyone except the ones designated. This being true we cannot say the fee title vested in the Corporation at the time the deed was made or that it certainly would vest in the foreseeable future.

Our views concerning the Articles of Incorporation are confirmed by an examination of deed No. 5 by which the land was conveyed to the Corporation. This deed, in the portion above copied, shows that it was the intention of the grantors to limit the title conveyed. The right was reserved for "lineal descendants" [of Clingman and Jones] to use the land "as a memorial, vacation, and reunion campsite" and for "any one of said descendants to establish a summer cottage" on the land.

The fact that the granting clause in deed No. 5 is regular and, apparently, conveys a fee absolute and that the portion of the deed quoted above is a limitation thereon, avails appellees nothing under the established rule of

this court that we look to the four corners of the deed in order to arrive at the intention of the grantors. Also, in applying this rule here, we can look to the testimony introduced by appellees, and from this we have confirmation that they expected the family organization to extend indefinitely.

Having concluded that the Corporation was in effect a trustee and that the use of the land was not limited to those descendants who were alive at the time the deed was made, it follows, as a matter of law, that deed No. 5 is void because it violates the rule against perpetuities. The authorities are numerous and uniform to that effect. The general rule is very well stated in 41 Am. Jur. at page 50 under the heading "Rule Against Perpetuities," which, in part, reads:

"Although all the established forms have been complied with governing the alienation of property, the law, for reasons of public policy, still imposes some restrictions on the right to dispose of property. One of the most important of these restraints is the rule against perpetuities. The rule against perpetuities prohibits the creation of future interests or estates which by possibility may not become vested within the life or lives in being at the time of the testator's death or the effective date of the instrument creating the future interest, and twenty-one years thereafter," etc.

For some of the decisions of this court sustaining the above rule see: *Moody* v. *Walker,* 3 Ark. 147; *Union Trust Co.* v. *Rossi,* 180 Ark. 552, 22 S. W. 2d 370, and; *Fletcher* v. *Ferrill,* 216 Ark. 583, 227 S. W. 2d 448, 16 A. L. R. 2d 1240. For other jurisdictions see: *Shepperd* v. *Fisher,* 206 Mo. 208, 103 S. W. 989; *Beverlin* v. *First National Bank In Wichita,* 151 Kan. 307, 98 P. 2d 200, 155 A. L. R. 688; *Glock* v. *Glock et al.,* 110 N. J. 477, 160 A. 339; *Jackson et ux.* v. *Powell et ux.,* 225 N. C. 599, 35 S. E. 2d 892; *Lewis* v. *Cockrell et al.,* 80 Fed. Supp. 380, and; *Foley* v. *Nalley et al.,* 351 Ill. 194, 184 N. E. 316.

Having reached the conclusion that deeds Nos. 4 and 5 are void because they violate the rule against perpetuities, it follows from the record that the bare legal title to said land was in Granville Jones at the time of his death as a result of deed No. 3, and that this title passed by his will to appellant and to his widow, Jessie Lyon Jones. Since Jessie Lyon Jones is deceased her portion of the title would of course vest in her legal heirs in the absence of a will by her. It is also clear that the equitable or beneficial title to the land vests in the Trustees of the Clingman-Jones Family Organization for the benefit of the lineal heirs of Drs. A. B. Clingman and Alfred Jones. These Trustees are the ones named as grantees in deed No. 1 since, as we have indicated, the equitable or beneficial title was never conveyed by them. Since Granville Cubage is the only surviving Trustee the equitable or beneficial title now vests in him as such Trustee.

Before appellant and Jessie Lyon Jones can be divested of the bare legal title, they would have to be made parties to litigation for that purpose.

Affirmed in part and reversed in part as above indicated.

Justice McFADDIN concurs in part and dissents in part.

Ed. F. McFADDIN, Associate Justice (Dissenting in Part). Using the same designation of the deeds as contained in the majority opinion, I make the following observations:

Deed No. 1 was a regular warranty deed from J. R. Vaught and wife to "Granville Jones, Isaac J. Jones and Granville Cubage, Trustees," dated September 3, 1923. There was nothing in this deed to show the purpose for which the grantees were trustees, and so there was nothing to show that the deed violated the rule against perpetuities, or any other rule. I maintain that these grantees became seized with the legal title in trust for whomsoever the evidence might establish to be the beneficiaries. Under our State (§ 50-412 Ark. Stats.), any conveyance executed

by these trustees to a third person innocent of the trust would pass a good title. But the evidence here shows that there was no conveyance to any such innocent third person.

Deed No. 2 was from the three trustees (grantees in Deed No. 1) to Isaac J. Jones, and was dated September 16, 1924. The grantee was one of the three trustees; and the evidence shows beyond question that the sole purpose of this deed was to empower Isaac J. Jones to borrow some money to improve the trust property, and that no such loan was ever consummated. I maintain that the evidence establishes that this deed was in equity no more than a power of attorney and could be cancelled in this suit and the title reinvested in the grantees in Deed No. 1.

Deed No. 3 and Deed No. 4 were both dated and executed the same day, May 28, 1927. In Deed No. 3 Isaac J. Jones and wife conveyed the land to Granville Jones. The grantor, Isaac J. Jones, and the grantee, Granville Jones, were two of the trustees who were grantees in Deed No. 1. Each of them knew that Deed No. 2 conveyed no title to Isaac J. Jones except to obtain a loan, and each of them knew that no loan was obtained and that the title still rested in the three trustees who were the grantees in Deed No. 1. So I insist that Deed No. 3, in truth and in fact, conveyed nothing.

Deed No. 4 — executed contemporaneously with Deed No. 3 — was from Granville Jones and wife to ''Granville Jones, Isaac J. Jones, Arthur Jones, Claude Jones and Gilford Jones, as trustees for themselves and other lineal descendants of Drs. A. B. Clingman and Alfred Jones.'' In this Deed No. 4, Granville Jones attempted to reserve certain rights to himself and wife, said attempted reservation being as follows:

''But specially reserving to grantors, Granville Jones and Jessie Lyon Jones, all profits arising from concessions, summer resort privileges, and other commercial and industral use of said land and of a dam and lake thereon known as 'Sylvan Lake,' and other improvements

heretofore placed on said land of Granville Jones, together with any future improvements incident to such use as a summer resort, when such improvements shall have been approved by a majority of the grantees as such trustees, conditioned that no sale, transfer, or assignment of these reservations, privileges and sources of revenue shall be made by the said Granville Jones and Jessie Lyon Jones, or either of them, without the approval of a majority of said trustees expressed in writing.''

I maintain that since nothing passed by Deed No. 3, then Deed No. 4 is a nullity and that all attempted ''reservations'' by Granville Jones and wife were and are nullities. The net result is that the title still rests in the grantees in Deed No. 1. This result disposes of all claims under the will of Granville Jones and all claims under the deed from Jessie Lyon Jones to Claude Jones, and likewise nullifies Deed No. 5.

Deed No. 5 was dated May 15, 1954: the grantors were Gilford Jones, J. Granville Cubage, Robert Highsmith, Herbert Chandler and Mrs. Lee J. Chandler, as trustees in succession to the trustees named in Deed No. 4. These grantor trustees claim to be the owners of the property by virtue of Deed No. 4; but with Deed No. 4 a nullity — as hereinbefore mentioned — the grantors in Deed No. 5 had nothing to convey. The grantee in Deed No. 5 was ''the Clingman-Jones Family Corporation.'' The majority opinion holds that this Deed No. 5 is void as violative of the rule against perpetuities. That may be true; but the better reason — as I see it — is that the grantors in Deed No. 5 had no title to convey because they had received nothing by Deed No. 4.

Now, with the foregoing observations made, it is evident that I regard the legal title to still be in the grantees in Deed No. 1, or the surviving one of such grantees. Therefore, this suit is simply a suit to have a trust declared and enforced against the surviving trustee in Deed No. 1. Thus, if my opinion prevailed, the work of the Chancery Court on remand would be considerably simplified because, as I see it, Jessie Lyon Jones never

had any "bare legal title" or any other kind of title, and all the Chancery Court needs to do on remand is to determine the trust created by Deed No. 1 and enforce it; or proceed to partition the property, if the trust be violative of the rule of perpetuities.